𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡

WARWICK COUNTY AND OTHERS V. CITY OF NEWPORT NEWS.

. November 16, 1916.

Absent, Sims, J.*

1. MUNICIPAL CORPORATIONS—*Annexation Ordinance—How Construed—Case at Bar.*—The annexation ordinance in the case at bar is to be read as a whole, and in the light of the court's order of annexation and of the statute, and, when so read and interpreted, it is plain that the council of the city is not authorized or empowered to apply the revenues derived from the annexed territory, during the period of the first five years from the date of annexation, to the improvement of other property of the city.

2. APPEAL AND ERROR—*Assignment of Error—Waiver.*—An assignment of error to the improper admission of evidence, and of evidence "of a character so intangible as to be not capable of being rebutted," but which does not call attention to any particular evidence as improperly admitted, and which has not been argued, either orally or in briefs, must be regarded as waived.

3. MUNICIPAL CORPORATIONS—*Annexation of Territory—Loss of Revenue to County—Extension Considered as Entirety.*—Although the annexation of a part of a county to a city may temporarily embarrass somewhat the county with respect to its revenue, that cannot be made the criterion by which the question of annexation is to be adjudged. The proposed extension must be considered as an entirety, and the rights and interests as well of those within the city as of those without are to be taken into consideration.

4. MUNICIPAL CORPORATIONS—*Annexation Ordinance—How Considered—Including Unplatted Land—Reasonableness.*—An extension ordinance must be considered as a whole, and is not unreasonable because there is embraced in the land proposed to be taken in unplatted or even marsh lands not needed by the city in the reasonably near future, for development and expansion. There may be, and in the case at bar were, other good and sufficient reasons why such lands should be so embraced.

---

* Submitted before Judge Sims took his seat.

23

5. Appeal and Error—*Extension Order—Fixing New Date For Effectiveness.*—Where the date fixed by the trial court for an extension ordinance to go into effect has passed pending an appeal from the order of extension, this court, on affirming the judgment, will fix a new date for the ordinance to go into effect.

Error to a judgment of the Circuit Court of Warwick county in an annexation proceeding. Judgment for the petitioners. Defendants assign error.

*Affirmed.*

The annexation ordinances and the order appealed from are as follows:

An ordinance to extend the corporate limits of the City of Newport News in pursuance of the provisions of an act of the General Assembly of Virginia, approved March 10, 1904, and known as section 1014-a, Virginia Code, 1904.

Be it ordained by the council of the city of Newport News:

1. That the city of Newport News hereby declares that it desires to annex in pursuance of an act of the General Assembly of Virginia, approved March 10, 1904, and known as section 1014-a, Virginia Code 1904, certain territory lying in the county of Warwick, adjacent to the present corporate limits of the city of Newport News, and to that end it doth hereby accurately describe the metes and bounds of such territory as follows:

All that territory lying between the present city limits, as established by an act of the legislature of Virginia, and the following boundary line: Beginning at the intersection of the centre line of Marshall avenue, and the southerly city limits, thence southerly along the centre line of Marshall avenue extended, to low water mark on Hampton roads, thence westerly along low water mark on Hampton roads to low water mark on James river, thence north-

westerly along low water mark on James river to its intersection with the present southerly city limits.

2. That the necessity for and the expediency of annexing the proposed territory is to give better health, police and fire protection and public school facilities in that territory, than the county in which it is located is enabled with the means at its command, to afford to such community, and, as a result, it endangers the safety of life, health and property, not only without, but within the corporate limits, a part of the said teritory being built up to the city limits.

3. That the territory proposed to be annexed is adjacent to the city on its southerly side, and about fifteen miles from the county seat of said county, and is already built upon, though without any sufficient system of sewers, water or gas, or street or other improvements therein, making it not only expedient, but necessary that some complete system of sewerage be promptly provided for the proper sanitation and improvement of such territory, and for the easy and convenient transaction of business with the residents of the city of Newport News and through its courts.

4. The terms and conditions upon which it desires to make the proposed annexation, and provision for the future management of the annexed territory are as follows:

(a) That the city of Newport News, shall assume and provide for the reimbursement of the county of a just proportion of any existing debt of said county, if any there be, and shall also make compensation to the said county for any school house or other public building of said county, located within the annexed territory.

(b) That the tax rate upon the land within the annexed territory shall not be increased beyond the rate assessed by the county in which it is located for its purposes at the time of the annexation under this ordinance for a period of five years after such annexation, except upon petition of the majority of the freeholders of the territory annexed.

(c) That all revenues derived by the said city of Newport News from taxation in said territory during the first period of five years, either on property or from other sources, including licenses, shall be wholly expended by the city of Newport News upon streets, sewers, lights, water and other public improvements in the territory annexed, provided, however, that at any time within the said five years, the council of the city of Newport News, may, by ordinance, set apart a sum equal to twelve per centum of the assessed value at the time of the annexation, of the lands annexed, or of such part thereof, as may be determined upon by the said council, which sums so set apart, shall be wholly expended in public improvements in and for the benefit of the annexed territory, or part thereof, as may be determined as aforesaid; and when said sum shall have been so set apart and said public improvements shall have been begun, the land annexed, or part thereof, as aforesaid, shall be subject to the city tax rate, and the proceeds thereof shall be paid into the city treasury, along with all other taxes and licenses in such territory for general purposes, although said five years shall not have elapsed, provided that the said sum to be set apart and expended shall be reduced by the sum already expended in said improvements under any other plan of annexation, provided further that out of the proceeds of sale of the next issue of bonds by the city of Newport News, after such annexation, the said sum equal to the said twelve per centum of the assessed value at the time of annexation of the land annexed, reduced by the sums hereinbefore mentioned shall be set apart and expended in said territory as hereinbefore directed, unless said sum has been already so expended.

(d) That all county levies imposed on persons and property within such territory for the current fiscal year, in which said annexation is made, shall be paid to the county.

(e) That the taxes assessed, collected and expended dur-

ing the said period of five years shall be so assessed, collected and kept, that the same may be expended as hereinbefore provided in the territory from which it was so collected, until and unless a sum be set apart equal to twelve per centum of the assessed value at the time of the annexation of the lands annexed, and when said sum shall have been so set part, and the public improvements shall have been begun, the land annexed shall be subject to the city tax rate.

(f) That the city of Newport News will, as soon as annexation is accomplished, afford police and fire protection and public school facilities to the citizens residing in the annexed territory; and will, with all reasonable dispatch, afford and furnish other public facilities and improvements to said citizens, as provided by law.

5. That an additional necessity for expediency of annexing the proposed territory is that within that territory proposed to be annexed, the city owns a large tract of land and is upon said tract constructing at a large expense, a safe harbor for small boats, on the shores of which it hopes to locate many small industries, and that it is constructing from said property a deep water pier where steamers and other large vessels, may land to receive and discharge cargoes.

6. That the city attorney be, and he is hereby instructed to institute and prosecute with as little delay as possible the necessary legal proceedings in order to annex to the city of Newport News by proper decree or judgment the territory hereinbefore accurately described, upon the terms and conditions hereinbefore set forth.

This ordinance shall be in force from its passage, April 6, 1914.

An ordinance to amend an ordinance to extend the corporate limits of the city of Newport News, in pursuance of an act of the General Assembly of Virginia, approved March 10, 1904, and known as section 1014-a Virginia Code, 104, approved April 6, 1914.

Be it ordained by the council of the city of Newport News that an ordinance to extend the corporate limits of the city of Newport News, in pursuance of an act of the General Assembly of Virginia, approved March 10, 1904, and known as section 1014-a, Virginia Code, be amended and re-ordained to read as follows:

1. That the city of Newport News hereby declares that it desires to annex in pursuance of an act of the General Assembly of Virginia, approved March 10, 1904, and known as section 1014-a, Virginia Code, 1904, and acts amendatory thereof, certain territory lying in the county of Warwick, adjacent to the present corporate limits of the city of Newport News, and to that end, it doth hereby accurately describe the metes and bounds of such territory, as follows:

All that territory lying between the present city limits, as established by an act of the legislature of Virginia, and the following boundary line: Beginning at the intersection of the centre line of Marshall avenue, and the southerly city limits, thence southerly along the centre line of Marshall avenue extended, to low water mark on Hampton roads, thence westerly along low water mark on Hampton roads to low water mark on James river, thence northwesterly along low water mark on James river to its intersection with the present southerly city limits.

2. That the necessity for and the expediency of annexing the proposed territory is as follows:

(a) To give better health, police and fire protection, and public school facilities in that territory than the county in which it is located affords to that community.

(b) That a large part of the said territory has been subdivided into city lots and blocks, and much of it is built up to the present city limits, being separated therefrom only by a street, and is without any sufficient system of sewers, drainage, water, gas, street or other improvements therein making it not only expedient, but necessary that some com-

plete system of public improvements shall be adopted in said territory for the safety of the life, health and property therein, as well as within the city of Newport News.

(c) The chief business and sources of employment in the city of Newport News and this adjoining territory is ship-building and shipping, much of the latter being the transportation of great quantities of coal to other seaports. Since the incorporation of the city of Newport News, owing to the erection and construction of new coal piers on private property outside of the city limits, and the abandonment of those formerly within the city limits, all of the coal handled, both for coastwise and foreign trade, whether bunker or cargo, is loaded immediately outside of the city, and is likewise much of the other merchandise received and discharged at this port of entry, and numerous steamers, both foreign and coastwise, call at these docks so immediately outside of the city limits, and great numbers of laborers are employed thereon, and sailors of all nationalities from these vessels are passing to and from the city (over private property and private right of ways), rendering the necessity imperative that the city shall be given jurisdiction over this territory.

(d) That the territory proposed to be annexed is fifteen miles from the county seat, and is adjacent to the city on its southerly side, is in the line of its inevitable business growth, and is entirely cut off by the location of the city of Neport News from the larger part of said county. All of the business on these docks and piers, and most of the business of all persons residing or trading in said territory is transacted with residents of the city of Newport News, or in offices located within the city limits, and it will greatly expedite the transaction of such business to have the said territory brought within the corporate limits of said city.

(e) That the inhabitants of this territory, and the persons owning property and transacting business therein, en-

joy many of the advantages of the city streets and improve-. ments, and much protection from the police and fire departments of the city, and their lands are thereby increased in value, without the payment of any taxes to the city therefor.

(f) That the city has improved many of its streets up to the city limits, opposite the said territory; and the said territory should be annexed in order that there may be some means provided for the opening, improving and maintaining of highways therein, as well as the improvement and maintenance of those already laid out.

(g) That within the territory proposed to be annexed, the city owns a large tract of land on Newport News creek, and is therein excavating and constructing at a large expense, a harbor for small boats (on the land so owned by the city, and upon the land adjacent thereto, it contemplates and expects industries to be located), and it is constructing at the mouth of this harbor, a pier where steamers and large vessels may land to receive and discharge cargoes. All of this property, and that adjoining comprised in this territory, should be annexed to the city, so as to subject the same and the persons doing business thereon to the laws and ordinances of said city, and for the benefit of municipal fire, police and health regulations, and also that the city may condemn land for the necessary streets, in the development of said territory.

3. The terms and conditions upon which it desires to make the proposed annexation, and provision for the future management of the annexed territory, are as follows:

(a) That a part of the territory described, if annexed, will be attached to the present first ward of the city, and the remainder thereof will be attached to the second ward of said city, as provided by law.

(b) That the city of Newport News shall assume and provide for the reimbursement of the county of a just propor-

tion of any existing debt of said county, if any there be, and shall also make compensation to the said county for any school house or other public building of said county, located within the annexed territory.

(c) That the tax rate upon the land within the annexed territory shall not be increased beyond the rate assessed by the county in which it is located for its purposes at the time of the annexation under this ordinance for a period of five years after such annexation, except upon a petition of the majority of the freeholders of the territory annexed.

(d) That all revenues derived by the said city of Newport News from taxation in said territory during the first period of five years, either on property or from other sources, including licenses, shall be wholly expended by the city of Newport News upon streets, sewers, lights, water and other public improvements in the territory annexed, provided, however, that at any time within the said five years, the council of the city of Newport News may, by ordinance set apart a sum equal to twelve per centum of the assessed value at the time of the annexation, of the lands annexed, or of such part thereof as may be determined upon by the said council, which sums so set apart, shall be wholly expended in public improvements in and for the benefit of the annexed territory, or part thereof as may be determined as aforesaid; and when said sum shall have been so set apart and said public improvements shall have been begun, the land annexed, or part thereof, as aforesaid shall be subject to the city tax rate and the proceeds thereof shall be paid into the city treasury, along with all other taxes and licenses in such territory for general purposes, although said five years shall not have elapsed, provided that the said sum to be set apart and expended shall be reduced by the sum already expended in said improvements under any other plan of annexation, provided further, that out of the proceeds of said sale of the next issue of bonds by the city of Newport News,

after such annexation, the said sum equal to the said twelve per centum of the assessed value at the time of the annexation of the land annexed, reduced by the sums hereinbefore mentioned, shall be set apart and expended in said territory as hereinbefore directed, unless said sum has been already so expended.

(e) That all county levies imposed on persons and property within such territory for the current fiscal year, in which said annexation is made, shall be paid to the county.

(f) That the taxes assessed, collected and expended during the said period of five years shall be so assessed, collected and kept, that the same may be expended as hereinbefore provided in the territory from which it was so collected, until and unless a sum be set apart equal to twelve per centum of the assessed value at the time of the annexation of the lands annexed, and when said sum shall have been so set apart, and the public improvements shall have been begun, the land annexed shall be subject to the city tax rate.

(g) That the city of Newport News will, as soon as annexation is accomplished, afford police and fire protection and public school facilities to the citizens residing in the annexed territory; and will, with all reasonable dispatch, afford and furnish other public facilities and improvements to said citizens, as provided by law.

(h) That all the school children living in Warwick county, and now attending school in the annexed territory, shall have the right to so continue for a period of three years from the date of annexation to attend such school, or such other school in the city as the school board may prescribe.

4. That the city attorney be and he is hereby instructed to institute and prosecute with as little delay as possible, the necessary legal proceedings in order to annex to the city of Newport News by proper order, decree or judgment, the

territory hereinbefore accurately described, upon the terms and conditions hereinbefore set forth.

This ordinance shall be in force from its passage.

Order in vacation.

This cause which came on to be heard on the proceedings heretofore had, the petition of the city of Newport News, and the answers filed herein, and the court having carefully considered all of the evidence, parol and written, including maps, documents, records and exhibits, and after a full view by the court itself of the territory sought to be annexed, and after hearing the arguments of counsel, and entering an order making this a vacation cause, the court taking time to consider, is now of opinion:

1. That it is necessary and expedient that the corporate limits of the city of Newport News should be extended for the reasons set forth in section 2 of the ordinance of the city of Newport News, approved by the mayor on the 16th day of July, 1914, and as stated in the opinion in writing herewith filed and made a part of the record, marked "A.'

2. That the corporate limits of the city of Newport News should be extended as in section 1 of said ordinance recited, the lines of annexation being so drawn as to contain a reasonably compact body of land, and the court being careful to see that no land is taken into the said city of Newport News which is not adapted to city improvements unless necessarily embraced in said compact body of land, and being careful also to exclude such land as the city of Newport News will not need in the reasonably near future for development, and has also considered the loss of revenue to the county.

3. That the terms, conditions, and provisions set forth in said ordinance are reasonable and fair, except as to subsection (h) of section 3, dealing with school children, which terms are changed as hereinafter set out, and just provisions are made for the control, management and improve-

ment of such territory, and also except as hereinafter specified.

4. Upon consideration whereof, it is adjudged, ordered and decreed that the following territory be and is hereby annexed to the city of Newport News from the county of Warwick.

All that territory lying between the present southerly city limits, as established by an act of the legislature of Virginia, approved January 16, 1896, and the following boundary line: Beginning at the intersection of the center line of Marshall avenue, and the southerly city limits, thence southerly along the center line of Marshall avenue extended and projected in a straight line, to low water mark on Hampton roads, thence westerly along low water mark on Hampton roads to low water mark on James river, thence northwesterly along low water mark on James river to its intersection with the present southerly city limits.

5. That the city of Newport News shall pay to the county of Warwick the sum of five thousand dollars ($5,000.00) for the school building not reserved to the said county, and located on Eighteenth street between Madison and Marshall avenues in the annexed territory, which said sum shall be paid on or before December 31, 1914, to the proper county authorities. If not so paid, then the payment thereof shall be enforceable by every appropriate legal remedy, and the title in fee simple to the property for which such payment is made, shall thereupon be transferred to and be hereby absolutely vested in the city of Newport News.

6. That until the 1st day of September, 1923, all school children living in Newport district of said county within a radius of two miles of the present location of any public school building in said city, shall have the right, free of charge, to attend the graded and primary schools of said city under the same regulations as are from time to time applicable to the children resident in the said city. Any

child resident of any portion of Newport district otherwise qualified for admission to the public high school or public high schools of said city shall have the privilege to attend free of charge and subject to the same rules and regulations as are from time to time prescribed for high school children resident in said city.

7. That all taxes and licenses accruing during the year 1914 in the annexed territory, and all years prior thereto, shall be payable to and collected by Newport district and the county of Warwick.

8. That the city shall proceed with all reasonable diligence to adequately provide for the police, sanitary, and fire protection of the annexed territory.

9. That the city of Newport News shall by ordinance organize the annexed territory either into a new ward or wards, or attach the same to existing wards of the city of Newport News, and further proceed in a manner prescribed by section 8 of an act of the General Assembly of Virginia, approved March 10, 1904, so as to fully guarantee and accord to each person within said annexed territory every right secured to them under said section 8 of said act.

10. That all the terms and conditions set forth in the ordinance approved on the 16th day of July, 1914, entitled "An ordinance to amend an ordinance to extend the corporate limits of the city of Newport News in pursuance of an act of the General Assembly of Virginia, approved March 10, 1904, and known as section 1014-a Virginia Code, 1904, approved April 6, 1914," are hereby ratified and approved by the court as reasonable and just and are declared to be binding upon the city of Newport News, except so far as the same are modified by or in conflict with this order.

11. That the term of office of any county or district officer residing within the bounds of the said annexed territory shall be unaffected by said annexation, as provided by sec-

tion 11 of said act, approved March 10, 1904, but he shall have no jurisdiction in the annexed territory.

12. That the provisions of this decree ordering the annexation of the territory hereinbefore set forth shall take effect and be in force from and after the 31st day of December, 1914.

13. That all fees for the service of papers in these proceedings and all other court costs shall be paid by the said city of Newport News.

And by consent of parties hereto entered of record, leave is given the defendants or any of them to file their bill of exceptions on or before December 31, 1914.

T. W. H.

*S. Gordon Cumming, J. Winston Read, Phillip St. George Wilson* and *H. T. Wickham,* for the plaintiffs in error.

*J. A. Massie,* for the defendant in error.

CARDWELL, P., delivered the opinion of the court.

This is a proceeding upon petition under the statute, filed by the city of Newport News in the Circuit Court of Warwick county, for the annexation to the city of certain territory belonging to the county of Warwick, described in an ordinance adopted by the council of the city, and pursuant to the provisions of the statute in such cases made and provided, the Governor of the State designated the Honorable Thomas W. Harrison, judge of the seventeenth judicial circuit, to hear the case and to determine the issues therein.

At the final hearing of the cause the learned judge presiding filed with and made a part of the record a memorandum of opinion succinctly summarizing the evidence in the case, and stating the facts deducible therefrom so clearly and fully that we deem it unnecessary to attempt to again

review the evidence here, and, therefore, adopt the said written memorandum of the trial judge as a part of the opinion of this court, it being as follows:

"There is little or no controversy in the testimony on any essential point. The facts may, therefore, be very briefly summarized.

"The city seeks to annex a large tract of land interposed between its eastern line and·the water front. The population of this territory is given in the city census, which by its particularity challenges criticism and invites detection of error, at about nineteen hundred, of which sixteen hundred are congested along certain so-called streets or avenues, notably Twentieth street, Ivy avenue and Madison avenue, in the northern portion of the territory, and three hundred in a settlement known as Dawson City in the southeast portion, to which there seems no access by any public highway. With the exception of about fifteen, the population is negro. Not only is it negro, but embraces some very bad types of that race. Without considering hearsay or reputation evidence, the direct evidence shows that just outside of the city limits negro dance halls, gambling joints and other disorderly negro resorts are maintained, and that neither the negro police justice nor the county police have control of the situation.

"There is but one public highway in the district, about fourteen hundred feet, over which the county assumes any control. The other so-called streets and avenues are not public highways.

"There are no sewers. The county superintendent of roads, in addition to the duties usually pertaining to that office, is the sanitary officer and supervises the removal of garbage or other unsanitary matter at convenient periods. The county board of health, however, impressed me as energetic and capable men, who discharged their duties energetically within the limits of the resources at their command.

"The fire protection in this northern section consists of three water plugs, five hundred feet of hose, and a casual bucket-brigade.

"South of this populated section there is quite a large body of unplatted land. But in this section the city has purchased land, and, at the expenditure of some two hundred and fifty thousand dollars, projected an ambitious scheme of development. It has constructed or has under construction a municipal pier, a small boat harbor and streets or avenues furnishing approaches to its water ways, and holds convenient sites for manufacturing or commercial plants, which it may be able to locate.

"Nor is the unplatted land in a strict sense agricultural land. Neither its assessed nor actual value is predicated on its value as an agricultural investment. Most of it is incapable of cultivation. Its value is the speculative growth of the city capitalized.

"The southern extremity is the railroad property with its valuable improvements. A part of this property is unplatted land, also, but it is evident that it is held in reserve by the railroad, not as agricultural land, nor for that matter as town lots, but for the particular uses of its railroad or terminal purposes. This section is entirely unpopulated except as it may be infested with vicious transients who seek a safe cover for crime along the water or midst the railroad structures.

"The railroad finds it advantageous to have certain of its employees clothed with police powers, but, I take it, as the evidence tends to disclose, that these police agents are naturally disinclined to interfere except as the railroad interests may require it. The railroad also maintains a road or street to its terminals.

"After a careful consideration of the entire evidence and a personal inspection of the territory, I am firmly convinced that under further county control there is little hope for any

development in this territory, except such as the city may make by the expenditure of its money. Such evil conditions as now prevail will be simply intensified as the negro population grows in number. On the other hand, under the firmer and more aggressive form of government which a city possesses, there is at least the hope that the city will progress to a successful issue of its plan of developments, unobstructed by untoward conditions, which it should have the unrestricted and exclusive power to remove.

"In all annexation proceedings it is necessary to view the proposal from the viewpoint of the State, the city, the county and the territory to be annexed.

"The interest of the State lies along the line which promises the great development. In this case, with the exception of the railroad company, it is hard to understand why the annexed territory should not be greatly benefited. Much of the revenue collected from this territory is now expended in other sections of the county, but, if annexed, under the law, for five years, the entire revenue must be expended in the annexed territory. The railroad company would be benefited by the increase of traffic in case the plans of the city are successful.

"The county does lose some revenue, and I have earnestly considered if the lines could be so drawn as to avoid this, but it seems impracticable. If the line be drawn so as to leave the railroad property in the county, it would mean that this property, in no sense agricultural, abutting upon the city and calling for police supervision, would be entirely segregated from the rest of the county. Entirely without population, a great commercial agency, a shipping and transportation terminal, the county could discharge no public duty with regard to it. It would be a taxable asset and nothing else. An additional objection, too, is that all the burdens which the county now discharges, or ought to discharge, to the rest of the territory would have to be borne by the city.

I do not believe it feasible to leave this corner, isolated from the county, and virtually in the city, outside of the proposed limits, simply because it is a desirable taxable asset, especially as it produces the injustice suggested. The loss of the county is heaviest in regard to its public schools, and in this respect I think the court can furnish some substantial relief. I think it is entirely within the power of the court to require the city to furnish to the school children, whose school facilities have been impaired, free tuition in the public schools, subject to its supervision. The public schools are not entirely municipal. They are State institutions, sustained in part by the State money, and, because in part sustained by local revenues, it does not mean that they are subject exclusively to local jurisdiction. In order to aid the county and Newport district for the time being, I propose to incorporate into the decree that the city, for the period of ten years, shall, on the same terms as to resident children, free of charge, admit into its colored or white schools—high, graded, primary—any child resident of Newport district, which under the laws may be assigned to the same or on the payment of any charge have the right to attend. Thus, when the county is relieved of its police salaries, its fire expenses, its sanitary and street charges, I believe no increase over the present rate of taxation will become necessary. For the ensuing year it receives the revenue, and before another county levy a new assessment will increase its revenue, I anticipate, sufficiently to avoid increase of levy. At least I hope so. And in considering the relief given the county, consideration ought to be given to the charge which the county not only does incur, but under the proper administration ought to incur.

"In every annexation there is a present loss of revenue to the county, but this is expected to be only temporary. The annexation is supposed to stimulate city growth to the

extent that in a short time the increased county values will render the loss of revenue negligible.

"The city must pay for the school building, which is valued at $5,000.00.

"The decree should also determine the political status of the inhabitants by assigning the same to some ward of the city. The decree should also fix the day for the same to become effective.

"I have, therefore, concluded to enter a decree annexing the territory on the statutory terms and the terms as to the free schools as herein indicated."

The decree indicated in the trial court's memorandum of opinion was duly entered in the cause, to which decree this writ of error was awarded.

The first error assigned is to the action of the trial court "in overruling the defendant county's motion to quash and dismiss the said proceeding, and in overruling the county's demurrer to the said petition."

The proceeding was instituted pursuant to the statue—section 1014-a, Code 1904—and clause 1 of the statute provides that, "The council shall declare by an ordinance * * * the terms and conditions upon which it desires to annex such territory, as well as the provisions which are made for its future management and improvement."

Objection is urged to the ordinance upon the ground that it does not set forth, as required by the statute, "the provisions which are made for its future management and improvement"—having relation to the territory proposed to be annexed.

The ordinance is, to all intents and purposes, substantially the same as the ordinance proceeded upon and called in question in the case of *Alexandria City* v. *Alexandria County, et als*, 117 Va. 230, 84 S. E. 630, wherein the court's opinion says: "This contention is without merit. As we have observed the ordinance is, *mutatis mutandis*,

the same as that of the council of the city of Richmond,. which came under review in *Henrico County* v. *Richmond City*, 106 Va. page 282, 55 S. E. 683, 117 Am. St. Rep. 1001, *et seq.*, and clearly the sufficiency of the ordinance was a jurisdictional question which the court necessarily had to consider and determine affirmatively in that case before it. could, as it did, affirm the judgment of the circuit court annexing certain territory of Henrico county to the city of Richmond."

The form of the ordinance in question here was likewise taken from the ordinance set out and proceeded upon in *Henrico County* v. *Richmond City, supra,* and sets forth the case of the city as fully and as explicitly as was practicable under the circumstances; so that the ordinance in the instant case, both as to form and substance, has been. twice approved by this court, and no good reason is shown why the court should depart from its former rulings in the cases adverted to.

The further contention is made by the learned counsel for the county of Warwick that even if the ordinance itself be sufficiently explicit as to the future management and improvement of the annexed territory, the trial judge has. failed in his order complained of to provide against the misuse of the taxes and levies to be derived by the city from the annexed territory during the next ensuing five years, as indicated in clause 3 of section 1014-a of the Code, *supra,* which provides that, "All revenues derived by such city or town from annexation in said territory during such period (five years), either on property or from other sources, including licenses, shall be wholly expended by such city or town upon street, sewer, light, water or other improvement in said territory." This contention, in so many words, is, "the court in its annexation order has not made any limitation as to how the revenues shall be applied; no person can challenge the discretion or wisdom of the city

·council, in applying all of it to that 'other public improvement,' the small boat harbor."

It would be difficult, as it seems to this court, for the learned judge below to have more safely, minutely and carefully guarded the rights, present and future, of the parties to this litigation than he has done in the order granting the annexation of the territory petitioned for by the city of Newport News, and it is to be presumed and relied upon that the authorities of the city will obey the law of the land and abide by the terms prescribed by the final order of the court in the case. The 10th clause of the order of the court is: "That all the terms and conditions set forth in the ordinance approved on the 16th day of July, 1914, entitled 'An ordinance to amend an ordinance to extend the corporate limits of the city of Newport News in pursuance of an act of the General Asembly of Virginia, approved March 10, 1904, and known as section 1014-a, Virginia Code, 1904, approved April 6, 1914,' are hereby ratified and approved by the court as reasonable and just and are declared to be binding upon the city of Newport News." * * * And "the terms and conditions set forth in the ordinance" referred to in the 10th clause of the court's order, in so far as it relates to revenues to be derived by the city from taxation of property within the annexed territory, or from other sources, etc., are, "That all revenues derived by the said city of Newport News from taxation in the said territory during the first period of five years, either on property or from other sources; including licenses, shall be wholly expended by the city of Newport News upon streets, sewers, lights, water and other public improvements in the territory annexed, provided, however, that at any time within the said five years, the council of the city of Newport News may, by ordinance, set apart a sum equal to twelve per centum of the assessed value at the time of annexation, of the lands annexed, or of such part thereof, as

2. Every person over twenty-one years of age applying may be determined upon by the said council, which sums so set apart shall be wholly expended in public improvements in and for the benefit of the annexed territory, or part thereof, as may be determined upon as aforesaid; * * *"

The provisions of the ordinance are to be read and interpreted in the light of the whole ordinance, as well as of the court's order of annexation and of the statute, clause 3 of section 1014-a of the Code, *supra*—and when so read and interpreted they are too plain to admit of an interpretation that would authorize or empower the city council to apply, as the learned counsel for the county of Warwick seem to apprehend, the revenues derived from the annexed territory, during the period of the first five years from the date of annexation, to the improvement of "the small boat harbor," constructed and owned by the city.

The second assignment of error relates to the ruling of the trial court in admitting and considering certain evidence which it is alleged was improper and "of a character so intangible as to be not capable of being rebutted;" but this assignment does not call the court's attention to any particular evidence as improperly admitted, and has not been argued, either in the petition for this writ of error or the brief of counsel, and, therefore, it is to be presumed that the assignment is waived.

The third and only remaining assignment of error calls in question the ruling of the trial judge upon the merits of the case.

As will appear upon a reading of the opinion of the presiding judge, quoted above, he did not attempt to analyze the evidence introduced, but the opinion as well as the order entered thereon shows that he considered carefully the entire evidence, including maps, documents, records and exhibits, besides personally viewing the territory sought to be annexed, and the record in the case has been given a most

careful examination and consideration in this court, resulting in the conclusion that the deductions drawn by the trial judge from the evidence, as stated in his memorandum of opinion, are fully justified, and that the conclusions therefrom, embodied in the court's order, are in accordance with the guiding principles governing the consideration of the case announced by this court in the cases of *Henrico County* v. *Richmond City* and *Alexandria City* v. *Alexandria County et als, supra;* therefore, no good purpose would be served by prolonging this opinion with a discussion of the testimony *pro* and *con* introduced in the case, or of the principles of law applicable to the facts proven. It is true that the case presents some features differentiating it in some respects from the cases heretofore considered by this court and just mentioned, which differentiating features have been ably and forcefully argued by the learned counsel for the county of Warwick, both orally and upon their briefs, but from every standpoint that the record has been viewed by us, they are not of sufficient importance to take the case from under the control of the principles announced by the court in the preceding annexation cases adverted to.

It is also pressed upon us with much earnestness that the taking of this territory from the county of Warwick and annexing it to the city of Newport News would result in a serious reduction of the present revenues of the county derived from taxation, and that the city desires to annex this territory solely for the purposes of revenue. We do not think that the evidence in the case bears out either of these contentions. A few of the answers given by the mayor of the city, when testifying in the case might, if read alone, be construed so as to bear out somewhat the second of these contentions, but when the whole of the witness' testimony is read, a fair interpretation of it is, as it appears to us, merely that the city should annex this territory for the

purpose of developing its harbor and furnishing better and more sufficient fire and police service and street improvements, and having done that, it should have the taxes from the C. & O. Ry. Company's property, as well as from the remainder of the territory sought to be annexed. It may be that the annexation of this territory will, for a while at least, embarrass somewhat the county of Warwick with respect to its revenues, but that cannot be made the criterion by which the question of annexation is to be adjudged. *Alexandria* v. *Alexandria County, supra;* and *Forbes* v. *Meridian,* 86 Miss. 243, 38 So. 677, where the court's opinion says:

"In passing upon the question of whether an ordinance making an extension of the limits of a municipality be reasonable, the jury must consider the proposed extension as an entirety. The question is not whether each and every portion of the territory included in the proposed extension should or should not, if considered separately of and by itself, have been included, but whether the action of the authorities, in view of the conditions confronting the municipality at the time of the adoption of the ordinance of extension, should be sustained. Nor is the question of the return of revenue which the city may receive from the territory embraced in the extension any criterion by which to judge the reasonableness of the ordinance. Municipalities are not devised for the purpose solely, nor chiefly, of raising revenue. The power of extending corporate limits is granted not to be resorted to for the purpose alone of increasing the income of the municipality, but in order that the benefits incident to civic government may be extended to those resident in the territory adjacent to the municipality and included in the extension; and, further, that the municipality by extending its police government, its sanitary and quarantine regulations, and its more adequate fire protection, may thereby conserve the best interests of the

inhabitants within its original borders, and also give to those living in the territory included in the extension more efficient protection against devastation by fire, and by the enforcement of necessary sanitary regulations to the public health decrease the danger from disease and pestilence. These are the paramount considerations, and incidental to these the citizens included in the extension are entitled to share in common with the other inhabitants of the municipality the convenience of sidewalks and lighted streets, fire protection, and all other advantages of city life."

It is perhaps true, as is usually the result in these annexation cases, that there are some portions of the area embraced within the boundaries of the territory annexed that may not be needed by the city "in the reasonably near future for development and expansion," but a proposed extension of the limits of the boundaries of the city has to be considered and determined as a whole, and unplatted or even marsh lands between that which should be annexed to the city must of necessity be taken in, which fact does not render the ordinance making the extension unreasonable. 1 McQuillin Mun. Corp., sec. 278; *Alexandria* v. *Alexandria County, supra,* and authorities there cited. When the instant case is so considered, the unplatted or marsh land and other unoccupied or undeveloped properties lying within the boundaries of the territory annexed to the city, as fixed by the trial court's final order, could not have been, as it appears to us, reasonably excluded, especially in view of the peculiar conditions shown to exist within the annexed territory and as to the existence of which there is, in fact, little or no dispute. The conditions referred to are so tersely and plainly stated in the opinion of the trial judge, quoted above, that it is deemed needless to attempt to describe them further here. Suffice it to say that, viewing the proofs in the case from the point of the State, the city of Newport News, and the citizens or owners of prop-

26

erty within the territory to be annexed, the court was well warranted in its conclusion that this territory should be annexed to the city and thereby placed under its unrestricted power and exclusive control, not only to the end that the evil conditions now prevailing therein may be removed, but that a greater degree of happiness, progress and safety, not only for the inhabitants of the city, but of the annexed territory and the owners of property situated therein may be provided for and the better assured. We are unable to find in the record any ground for the apprehension of counsel for the county of Warwick that the financial condition of the city of Newport News is such that it will be unable to take care of the territory to be annexed to the city pursuant to a final order in this case.

The order of the trial court provided that the annexation therein determined upon should take effect and be in force from and after the 31st day of December, 1914, but by reason of the suspension of that order during the pendency of this appeal, it becomes necessary, in order to avoid confusion, to change the time at which the annexation shall take place and to amend or modify the seventh clause of the order; therefore, it will be provided by this court that the annexation shall take place and be in force from and after the 31st day of December, 1916, and that clause 7 of the order of the trial court be modified so as to read as follows:

"7. That all taxes and licenses accruing during the year 1916 in the annexed territory, and all years prior thereto, shall be payable to and collected by Newport district and the county of Warwick." Subject to these modifications the judgment of the circuit court is affirmed.

*Affirmed.*