# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## COUNTY OF NORFOLK V. CITY OF PORTSMOUTH.
### and
## SOUTHERN RAILWAY COMPANY V. CITY OF PORTSMOUTH.

March 13, 1919.

1. MUNICIPAL CORPORATIONS—*Annexation of Territory—Power Exercised by Trial Court.*—Under the Constitution of 1902, section 126, and the general statute law enacted in pursuance thereof, the trial courts, in passing upon the questions relative to the annexation of territory to a municipal corporation, exercise a power formerly exercised by the legislature itself by the passing or refusing to pass special statutes for the enlargement of the limits of cities and towns. Hence the trial courts in such cases exercise a constitutionally delegated power, which, although mainly judicial, and not without limits, is to some extent quasi legislative and political in its character.

2. MUNICIPAL CORPORATIONS—*Annexation — Appeal and Error — Weight to be Given Judgment of Trial Court.*—In annexation proceedings the trial courts having peculiar opportunities to ascertain the very right of the case, by a view of the *locus in quo*, and by the examination of witnesses in the presence of the courts, their conclusions and decisions on matters of fact are not to be disturbed unless plainly wrong notwithstanding the provision of the statute that an appeal in such cases "shall be heard without reference to the principles of demurrer to evidence; the evidence to be considered as on appeal in chancery cases." Code 1904, subsection 5, section 1014-a. And while the appellate court will not disregard any of the evidence or inferences which may properly be drawn therefrom, but will consider all of the evidence in the record, yet, in such court, a certain presumption of correctness will attend the decision by the court below of such questions of fact, which is greater than would adhere to it if based on testimony not delivered in the presence of the trial judge.

3. APPEAL AND ERROR—*Presumption in Favor of Trial Court's Decision.*—When the testimony is heard by the judge *ore tenus* in a chancery case (as for example in a divorce case), his decision of questions of fact arising thereon is attended with a stronger presumption of their correctness than where the testimony is in the form of depositions.

4. MUNICIPAL CORPORATIONS—*Annexation—Density of Population.*
—In the instant case, which involved the annexation of terri-
tory of Norfolk to the city of Portsmouth, making every due
allowance for the abnormal congestion in population of the city
of Portsmouth, due to Government operations in the vicinity
of the city, and for its decrease when conditions become stabil-
ized, a preponderance of the evidence in the record showed
that the normal population of Portsmouth, exclusive of the
annexation in question, might reasonably be expected to be
very dense as compared with the population of other cities
in the State and much too dense for the welfare of the city.

5. MUNICIPAL CORPORATIONS—*Annexation—Financial Ability of the
City—Value of Ferry Franchise.*—In annexation proceedings
the county of Norfolk took the position that the city of Ports-
mouth would not be financially able to discharge both its obli-
gations to the newly annexed territory and to the old city.
The question turned principally upon the value of the interest
of the city of Portsmouth in the Norfolk County Ferries, a
one-half interest.

*Held:* That the value of this interest should not be based alone
upon the present annual rental returns thereof, but its sale
value, and its rental value after the termination of the exist-
ing lease, should be taken into consideration.

6. MUNICIPAL CORPORATIONS—*Annexation of Territory—Streets.*—
Where in annexation proceedings a preponderance of evidence
showed that the city officials having jurisdiction of street im-
provements were alert to the importance of such improve-
ments, and the financial ability of the city having been es-
tablished, it must be assumed that all reasonable improvement
of the streets in question will be made in a reasonable time.

7. MUNICIPAL CORPORATIONS—*Annexation of Territory—Sewerage
—Amendment of Order.*—Where in annexation proceedings it
appears from the evidence that there is just ground for reason-
able apprehension that the construction of a necessary sewer-
age system in two wards of the old city might be postponed
until after the sewer system was constructed in the newly an-
nexed territory, the annexation order may be amended by the
Supreme Court of Appeals, to the effect that plans for the
sewerage of the annexed territory shall be a part of one
sewerage system making a reasonable provision also for the
sewerage of the two wards, and that the actual construction
and installation of the system in the annexed territory shall
not precede in time the completion of the construction and in-
stallation of the system for the wards.

8. MUNICIPAL CORPORATIONS—*Annexation Proceedings—War.*—It
was objected to an order of annexation that the entry of any
order of annexation was inexpedient at the time the order
aforesaid was entered, when "the country was at war, con-

ditions were unsettled and abnormal and it was impossible to foresee what the situation would be at the end of the war;" and on appeal it was urged that any order of annexation was still inexpedient, notwithstanding the armistice, since conditions were yet far from normal.

Held: That the objection was fully met by a provision in the annexation ordinance that the city should not issue the bonds therein mentioned until after the next general assessment of land, which would not occur until 1920, and by the provisions contained in the order which postponed the execution of certain provisions thereof until the expiration of the period of twenty months after the peace proclamation.

9. MUNICIPAL CORPORATIONS—*Annexation of Territory—Benefits to Annexed District.*—Where the evidence clearly showed conditions in the annexed territory with which a county government was inadequate, and was not expected under our laws to deal with, and which should be dealt with by municipal authority, the fact that an increased burden of taxation will eventually be placed upon the property owners of the annexed territory should not be allowed to bar the future welfare and progress of the whole community, including that contained in the older boundaries of the city as well as that within its newly enlarged boundaries.

10. MUNICIPAL CORPORATIONS—*Annexation of Territory—Railroads and Industries.*—While railroads and other industries, whose plants are embraced in part of the annexed territory, will not derive as great benefit from the annexation to the city as other property owners in other parts of the annexed territory, and the added burdens of taxation will be greater on them, yet the ultimate interests of such concerns cannot be severed from the community in which they are located, and they may be included, especially where such inclusion is necessary to form the annexed territory into "a reasonably compact body of land."

11. MUNICIPAL CORPORATIONS—*Annexation of Territory—Valuation of School Houses.*—Acts 1904, p. 145, Code of 1904, section 1014-a, subsection 3, provides for compensation to any county for any school house or other public building of such county located within the annexed territory.

Held: That under this statute the valuation of school buildings on their original reasonable cost, less their depreciation due to age, was correct, and that a county was not entitled to a valuation based upon the cost to rebuild the school houses at the time of the annexation order, less a proper percentage for depreciation.

12. MUNICIPAL CORPORATIONS—*Annexation of Territory—Assumption of County Indebtedness.*—Where a county's indebtedness

81

was a first lien upon a one-half interest which the county owned in a ferry, and the rentals from the ferry were more than sufficient to pay the interest on the indebtedness, it would be inequitable to hold that a portion of the county and its people when annexed to a city must carry with them a part of the burden of the indebtedness, when they cannot carry with them the benefit of any part of the security therefor in which they formerly had an interest. Therefore, under Code of 1904, section 1014-a, which provides that upon annexation a city shall assume a just proportion of the county's existing indebtedness, a city is not required to assume a partion of the indebtedness so secured.

13. MUNICIPAL CORPORATIONS—*Annexation*—*School Bonds.* — Under Code of 1904, section 1014-a, subsection 3, the court did not err in annexation proceedings in requiring the city to assume school bonds and pay a sum in cash, the bonds and cash aggregating the total value of the school houses in the annexed territory.

14. MUNICIPAL CORPORATIONS—*Annexation of Territory*—*Bridges.*— The order of court in annexation proceedings required the city to pay the county one-half the cost of a bridge, one-half of which was included in the annexed territory.

*Held:* Error. Code of 1904, section 1014-a, subsection 3, does not contemplate compensation being made to the county for territory or improvements thereon.

15. MUNICIPAL CORPORATIONS—*Annexation of Territory*—*Bridges.*— Code of 1904, section 1014-a, in requiring that the municipality shall assume and provide for the reimbursement of the county, not only for a just proportion of any existing indebtedness, but "also for compensation for any school house or other public building of such county located within the annexed territory," departs from the true principle that compensation should not be required from the city to the county for territory taken or improvements thereon in annexation proceedings; hence, the statute will be strictly construed, upon an application for compensation for improvements upon the annexed territories.

16. MOOT QUESTIONS—*Appeal and Error*—*Assignment of Error.*— An assignment of error that raises merely a moot question need not be considered.

Appeal from a decree of the Circuit Court of Norfolk county in annexation proceedings. Decree for complainants. Defendants appeal.

*Amended and affirmed.*

The opinion states the case.

*A. B. Carney, E. R. F. Wells, H. H. Rumbles* and *Williams, Tunstall & Thom,* for the appellants.

*John W. Happer* and *S. Heth Tyler,* for the appellee.

SIMS, J., delivered the opinion of the court.

The above entitled appeals involve proceedings in the court below in one case only, being appeals taken by the respective plaintiffs in error, the county of Norfolk and the Southern Railway Company, from the same order of court. The questions raised by the assignments of error upon the appeal of the former will be first considered and thereafter the questions so raised upon the latter appeal.

The Honorable P. H. Dillard, judge of the seventh judicial circuit, having been designated for that purpose in accordance with the statute in such case made and provided, held and presided over the trial court, and heard and determined the issues in this case, and it is the decree entered by him at the final hearing thereof which is before us for review on appeal.

[1-3]   Under the Constitution of 1902, section 126, and the general statute law enacted in pursuance thereof, Code 1904, section 1014-a, the trial courts in this class of cases, in passing upon the questions of what amount of territory, if any, due consideration of the interests of the State, the city, the county and the territory sought to be annexed, may require; upon the questions of how such interests may be affected by the proposed annexation, in view of the size and crowded condition of such territory and of such city, or the contrary, and in view of the financial ability of the city, the health of the respective communities, their past growth, their needs in the reasonably near future for development and

expansion, and upon other facts and circumstances shown in evidence in such a proceeding, exercise a power formerly exercised by the legislature itself by the passing or refusing to pass special statutes for the enlargement of the limits of cities and towns. *Henrico County* v. *City of Richmond,* 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001. Hence the trial courts in such cases exercise a constitutionally delegated power, which, although mainly judicial, and not without limits, is to some extent quasi legislative and political in its character. See the case last cited and also *Winchester, etc., Co.* v. *Commonwealth,* 106 Va. 264, 55 S. E. 692. And the statute law on the subject having made special and eminently fair and just provisions for the constitution of the trial courts, and such courts having peculiar opportunities to ascertain the very right of the case, by a view of the *locus in quo,* and by the examination of witnesses in the presence of the court, their conclusions and decisions on matters of fact are not to be disturbed unless plainly wrong, notwithstanding the provision of the statute that an appeal in such cases shall be heard "without reference to the principles of demurrer to evidence; the evidence to be considered as on appeal in chancery cases." Pollard's Code, 1904, subsec. 5, sec. 1014-a. For, when the testimony is heard by the judge *ore tenus* in a chancery case (as for example in a divorce case), his decision of questions of fact arising thereon is attended with a stronger presumption of their correctness than where the testimony is in the form of depositions. And while the appellate court, under the statute last quoted, will not disregard any of the evidence or inferences which may properly be drawn therefrom, but will consider all of the evidence in the record, yet, in such court, a certain presumption of correctness will attend the decision by the court below of such questions of fact, which is greater than would adhere to it if based on testimony not delivered in the presence of the trial judge.

It is from this standpoint that we approach the consideration of the facts of this case.

The assignments of error are few; but, as is to be expected in such a case, the testimony is voluminous and covers a multitude of details of facts and circumstances.

The assignments of error of the county of Norfolk are the following:

(A).   The court erred in annexing any portion of said territory, because the evidence shows that it was not necessary or expedient at this time to do so.

(B).   The court erred in adjusting the rights of the city of Portsmouth and the county of Norfolk, in that it failed to allow a proper valuation for the school property included in the annexed territory, and failed to require the city of Portsmouth to assume any portion of the bonded indebtedness of the county of Norfolk."

There are also the following cross-assignments of error by the city of Portsmouth:

(C).   That the court erred in requiring the city of Portsmouth to assume $95,000.00 of the school bonds which were a lien on the schoolhouse property in the annexed territory; and

(D)   That the court erred in requiring the city of Portsmouth to pay the county of Norfolk $13,500.00, being one-half of the cost of the Port Norfolk and West Norfolk bridge.

The substantive law as to the considerations which should govern the trial court in annexation proceedings is so fully defined by the statutory provisions and in the decisions in Virginia on the subject that we do not feel that any general exposition of it here would serve any useful purpose.  See *Henrico County* v. *City of Richmond,* 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001; *Alexandria* v. *Alexandria County,* 117 Va. 230, 84 S. E. 630; *Warwick County* v. *Newport News,* 120 Va. 177, 90 S. E. 644.

There is, indeed, no conflict before us over what are the general considerations which should so govern. Any conflict which there may be as to the law as applicable to particular branches of the case will be considered below in this opinion.

Proceeding, therefore, to take up for decision the questions arising in the case—

1. We will consider the first assignment of error from the standpoint of the interest of the State, the city of Portsmouth, the annexed territory, and the county of Norfolk.

(a). The record does not disclose that the State has any interest which is divergent from that of the city of Portsmouth and of the inhabitants and property owners thereof, or of the annexed territory and its inhabitants and property owners.

(b). Concerning the city of Portsmouth, and its inhabitants and property owners, exclusive of the annexed territory in question, the following outline of the material facts will be given:

[4] The present area of the city of Portsmouth is only about 1687 acres, or about 3½ square miles. Its population by the United States Census of 1910 was 33,190, of which 5,329 were in the Sixth Ward and 5,699 were in the Seventh Ward, which were annexed to the city in 1909. It increased in population 90.5 per cent. during the preceding decade, according to such United States Census report, but about two-thirds of this increase was due to the annexation last mentioned of 1909, leaving such increase for such decade in the old territory about 50%. The record does not disclose what its present population is. It does disclose that the latter was abnormally congested when the decree under review was entered, due to government operations in the vicinity. But the government Navy Yard at Portsmouth is a permanent institution and an increase of population of Portsmouth beyond the normal may reasonably be expected to continue

after normal conditions ensue following the formal procla-
mation of peace, which may be expected before very long
to end the world war. Making every due allowance, there-
fore, for the abnormal congestion aforesaid and for its de-
crease when conditions become stabilized, it is deemed suffi-
cient to say that a preponderance of the evidence in the rec-
ord shows that the normal population of Portsmouth, ex-
clusive of the annexation in question, may reasonably be
expected to be very dense as compared with the population
of other cities in the State and much too dense for the wel-
fare of the city.

Owing to its proximity to the city of Norfolk and its
physical surroundings on other sides, the city of Ports-
mouth can expand only in one direction, and any ex-
pansion would first embrace the territory which the city
seeks to annex in the proceeding now before us.

[5] With respect to the financial ability of the city to
make proper provision for the future welfare of the area
annexed by the order under review, there is not so much
conflict in the evidence as in the opposing views taken of it
by witnesses and counsel in the case. There is but little dif-
ference in the evidence as to what are the present financial
resources of the city. There is a very great difference, how-
ever, in the views taken of such resources for the near fu-
ture, and this difference consists chiefly in the valuations
placed on the interest which the city of Portsmouth owns
in the Norfolk County Ferries. That is an one-half interest
in such ferries, which has been and is now under lease, yield-
ing a rental return to the city of $67,000.00 per year. The
position taken in behalf of the county of Norfolk, which is
to the effect that the city of Portsmouth will not be finan-
cially able to discharge both its obligations to the newly an-
nexed territory and its inhabitants and property owners,
and to the inhabitants and property owners of the old city,
especially to the Sixth and Seventh Wards thereof and their

inhabitants and property owners, is reached by regarding such ferries as available as an asset of the city only to the extent of its present annual rental return aforesaid. It ignores entirely any further realizable value to the city of such asset. We are of opinion that this is plainly a mistaken view of the subject. It appears in evidence that such asset is free from all bonded indebtedness of the city and that it could be sold without interfering with any of its municipal functions, and if sold, the preponderance of the evidence shows that it would sell for at least some two millions of dollars. Furthermore, the existing lease of such ferries will expire next year, and the preponderance of the evidence is that it may reasonably be expected to be let for a net rental to the city thereafter of at least $120,000 per annum. Taking such valuations to be approximately correct, we entertain no doubt of the financial ability of the city of Portsmouth in the premises, without the necessity for any increase in its current tax rate. And the power to increase the tax rate, is of course an additional resource of the city. The present tax rate, however, is high and doubtless no increase thereof will be resorted to, except in an unexpected and temporary emergency.

[6] Coming now to the subject of the duty of the city of Portsmouth with respect to improving the streets and constructing a sewer system for the Sixth and Seventh Wards aforesaid, about which there is much testimony in the case:

The storm center of the testimony against the annexation now in question from the standpoint of the future welfare of the city of Portsmouth and of the inhabitants of its older territory, and especially of those who live or own property in the said Sixth and Seventh Wards, converges around the problem whether the city will have the financial ability to discharge its obligations to the new area and its inhabitants and property owners, without rendering it unable to dis-

charge its existing duty to make reasonable and much-needed improvements of its existing streets, especially in said wards, and to provide a long needed improvement of constructing a sewerage system in said wards. And these are the chief questions in the case concerning the welfare of the old city and its inhabitants and property owners.

On the subject of the streets, the preponderance of the evidence in the case tends to show that their bad condition may be due in part to the fault of contractors who constructed certain improvements thereof for which they may be held responsible, and that the enforcement of that responsibility may perhaps be depended upon to solve the most serious portion of the street problem aforesaid. And the preponderance of the evidence shows that the city officials now having jurisdiction of the street improvement matters are alert to the importance of such improvements, and the city having the financial ability to accomplish it, we must assume that all reasonable improvement of the streets in question will be made in a reasonable time, whether or not it shall turn out that the supposed liability of the contractors aforesaid can be enforced.

[7] On the subject of providing a sewerage system for the Sixth and Seventh Wards, however, there is more difficulty. The evidence is uncontradicted that the city has never even taken up for consideration when it will supply these wards with a sewerage system. Those wards are at present absolutely without any sewerage system, and the evidence shows that the sanitary conditions due to that want are much worse than exist in the annexed territory, where there are some private sewers, and where the dry closets are more efficiently attended to by the county authorities than are those in such wards under the city management. It is true that the evidence shows that a general sewerage system, to serve both the newly annexed territory and the Sixth and Seventh Wards can be more effi-

82

ciently and practically planned and more economically executed, if it is all done at once and as parts of one system. But, without going further into details, we are constrained by the evidence to say that we feel that as the order under review stands, the inhabitants and property owners of the old city are left with just grounds for reasonable apprehension that the more pressing need for the construction, of a sewerage system in the said wards may be postponed until after the sewer system is constructed in the newly annexed territory. This apprehension may be removed, however, by an amendment by us of the provisions of said order which we are of opinion should be made, to the effect that the plans for the sewerage of the annexed territory shall be a part of one sewerage system making reasonable provision also for the sewerage of said wards, and that the actual construction and installation of said system in said annexed territory shall not precede in time the completion of the construction and installation of said system for said wards. The following position on this subject is taken, indeed, in argument for the city, as quoted from its reply brief in the case: "An inspection of the maps will show that it is but reasonable to suppose that after the next assessment of land, when the city of Portsmouth obligates itself and is obligated to furnish sewerage to the territory annexed under this order, it will install a comprehensive system of sewerage, including the Sixth and Seventh Wards. * *" The amendment of the order of court which will be made, as just stated, will, therefore, but put into effect the existing purpose of the city on the subject as urged for it in argument.

[8] Only one further objection to the annexation from the standpoint of the interest of the city is deemed material to be specifically mentioned and passed upon. Such objection has been much pressed in the petition of and in argument for the county of Norfolk, and that is that the entry of any order of annexation was inexpedient at the time the

order aforesaid was entered, when "the country was at war, conditions were unsettled and abnormal and it was impossible to foresee what the situation would be at the end of the war;" and, as is now urged in argument, any order of annexation is still inexpedient, only in perhaps a less degree, notwithstanding the armistice, since conditions are yet far from normal. But we are of opinion that it may reasonably be expected that normal conditions will be restored within twenty months after the proclamation of peace, and, hence, we think that the objection under consideration is fully met by the provision in the annexation ordinance that the city shall not issue the bonds therein mentioned until after the next general assessment of land, which will not occur until 1920, and by the provisions contained in the order which postpone the execution of certain provisions thereof until the expiration of the period of twenty months after the peace proclamation.

We are of opinion, therefore, that, with the said order amended as aforesaid, the annexation will be manifestly for the best interest of the whole of the old city of Portsmouth and its inhabitants and property owners.

We come now to consider the annexation from the standpoint of the interest of the annexed territory, which includes, of course, the interest of its inhabitants, property owners, railroad and other industries.

The opposing testimony and evidence in the record is directed against the annexation of the very large territory sought to be annexed by the ordinance. The order of court aforesaid annexed something less than one-half of the territory sought to be annexed by the city.

[9] The territory in fact annexed by the order of court is for the most part laid out into building lots for residential purposes, and contains a population of some 10,000 people—sufficient under our laws for it to obtain a charter as a city. It is practically without any fire protection,

except that which the railroads and certain other large industries provide for themselves. It has some sewers, but those have been constructed without system and are grossly inadequate. A large part of its population has been forced for many years to go five miles to traverse a distance of only about one and a half miles to reach a much used ferry, on account of having no bridge across Scott's creek. There are many other circumstances appearing in evidence which tend to show conditions in the annexed territory with which a county government is inadequate, and is not expected under our laws, to deal, and which should be dealt with by municipal authority (*Henrico County* v. *City of Richmond, supra,* 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001), but it is not thought that any useful purpose would be served by mentioning them here in further detail.

The annexed territory, aside from that occupied by railroad and other industries which will be presently more particularly mentioned, will be benefited by the annexation, in the following especial ways, which may be mentioned: All of the revenue from taxation therein must be expended therein for the period and for the purposes prescribed by statute and by the order of court aforesaid. It will receive city fire protection and consequent reduction of fire insurance rates, which will aggregate a large pecuniary saving to the property owners thereof. It will be provided with a sewerage system. It will have a bridge provided across Scott's creek, which will be a great public convenience to a large part of its population and one long needed. And it will be placed in a position to obtain many other needed public improvements and advantages which in the nature of things a county government is unsuited to provide, and which may reasonably be expected from municipal government.

On the other hand it may be expected that an increased

burden of taxation will eventually be placed upon the property owners of the annexed territory; but this is inseparable from the attainment of increased public benefits and advantages; and should not be allowed to bar the future welfare and progress toward a more advanced and higher stage of civilization of the whole community, including that contained in the older boundaries of the city as well as that within its newly enlarged boundaries.

Indeed, the population of the annexed territory above mentioned has been but an overgrowth of the old city. As is said in the opinion of this court in *Alexandria* v. *Alexandria County, supra,* 117 Va., at p. 241, 84 S. E., at p. 633, of the people of such a suburban community: "The people market, shop and transact their business in the city * * * and many of them are employed in the city. They attend the churches, places of amusement, participate in the social life of the city, and are, practically, as closely connected with city life as are the people residing within the city's boundaries. They use its streets, * * * being without * * * fire protection * * * the fire department of the city (has) always responded to calls for assistance from these outlying sections. In other words, the people in these localities enjoy in a large degree many of the benefits of the city without having to bear any of its burdens * * *" Having due regard, therefore, for the mutual rights affected, we are clearly of opinion that the expected future imposition of the added burdens, which are inseparable from and are incident to an annexation in such a case, does not afford an adequate reason why the annexation should not be had.

[10] With respect to the railroad and other industries whose plants are embraced in the annexed territory, the following should be said: It is true that these concerns city as will other incorporated and individual property will not derive as great benefit from annexation to the

owners in other parts of the annexed territory; and the added burdens of taxation when the city government goes fully into effect will be much greater on the former than the latter. Yet the ultimate best interests of such concerns cannot be severed from that of the community in which they are located. What will best promote the future welfare of the latter is, when all things are considered, for the best interest of such industries also. Moreover, we are of opinion that the inclusion of the land occupied by the industries in question was necessary to form the annexed territory into "a reasonably compact body of land," as the statute in such case requires.

It remains for us to consider the interest of the county of Norfolk as opposed to the annexation in question. On this subject nothing is interposed by the assignments of error of the county as standing in the way of the annexation. And the complaints made by its other assignments of error go, not to the necessity or expediency of the annexation, but only to certain details of the terms of the order aforesaid. These assignments of error will be presently considered.

Our conclusion at this point, therefore, is that, subject to the amendment of the order under review which we will make in our order in the case, as above indicated, there was no error in the action of the court below in annexing the territory it did as aforesaid to the city of Portsmouth.

The second assignment of error of the county of Norfolk embraces two questions. We shall consider them in their order as stated below.

[11] 2. Did the court below err in that it failed to allow a proper valuation for the school houses included in the annexed territory?

The brief for the county of Norfolk and oral argument in its behalf raise no question as to the valuation of the

school property, except with respect to the school houses in question.   Nor is there any cross assignment of error on the part of the city of Portsmouth touching the allowance of compensation to the county for the school house lots.   We must, therefore, confine our consideration of the first question raised by the second or "(B)" assignment of error of the county, quoted in the outset of this opinion, to the valuation of the school houses included in the annexed territory.

The court below proceeded in this matter upon the following principle:

The court based its valuation of the buildings on their original reasonable cost, less their depreciation due to age and use; and it adopted two and one-half per cent. of the cost price of the buildings as the annual depreciation.

The county especially objects to such a principle being adopted by the court as the basis of the valuation of the buildings; and contends that the court should have allowed the amount for the buildings which it would have cost to rebuild them anew at the time of the court's order, less a proper percentage for depreciation.

The statute on this subject is as follows:   "In every case of annexation such city or town shall assume and provide for the reimbursement of the county or counties of such just proportion of any existing debt of such county or counties as may be determined in said proceeding, and also for compensation to any county for any school house or other public building of such county located within the annexed territory, which shall not be reserved in the proceeding in the county."   Acts 1904, p. 145, 1 Pollard's Code, 1904, sec. 1014-a, subsection 3.

It will be observed that the statute does not use the word "value," but merely requires the municipality to provide "for compensation" to the county for any school house, etc. We are of opinion that the true intent and meaning of the

statute is, not that the county shall sustain a loss or reap a profit by any depreciation or enhancement of what would be the cost of reconstruction of the buildings; but that the county shall be repaid the original reasonable cost thereof, less a fair deduction for depreciation.

We are, therefore, of opinion that there was no error in the action of the court in adopting the principle it did in arriving at the valuation it made of the buildings in question.

The county also objects to the figures of valuation of the buildings fixed by the court. There is not much, but some, conflict of evidence on that subject. We deem it sufficient to say that we are of opinion that the preponderance of the evidence sustains the figures adopted by the court.

The following is the other question embraced in the second, or "(B)" assignment of error of the county of Norfolk:

[12]   3. Did the court below err in that it failed to require the city of Portsmouth to assume any proportion of the bonded indebtedness of the county of Norfolk, other than the school bonds hereinafter mentioned?

The county indebtedness in question, outstanding at the time of the order of annexation, amounted approximately to $374,710. It is secured by first lien on the county's one-half interest in the Norfolk County Ferries, above mentioned. The annexation takes over the territory embraced therein, and relieves the county from all future outlay on account thereof, but the county will still continue to receive its one-half of the rental return from said ferries, and will continue to own its whole one-half interest in such ferries, subject to said lien thereon, which will constitute an asset far more than sufficient to pay the accruing interest and principal of said indebtedness, and the county will have a large balance remaining with which to help in bearing any burden of taxation resting on the remaining territory and

people of the county, so that no burden of taxation is left on the people of the remainder of the county on account of such indebtedness. On the other hand, the burden of future taxation, inseparable from the annexed territory, accompanies it and its people into the municipality, and yet no part of the equitable share of such territory and its people in the county's share of said ferries passes to the municipality with the annexed territory or its people. That is to say, the bonded indebtedness aforesaid is secured on an asset in which all the people of the whole county of Norfolk, as it stood prior to the annexation, had a common equitable interest; and we are of opinion that it would be inequitable to hold that that portion of the county and its people embraced in the annexation aforesaid must carry with them a part of the burden of such indebtedness, when they cannot carry with them the benefit of any part of the security therefor in which they formerly had an interest.

Such being the situation, the position taken by the county of Norfolk on this point is plainly inequitable and cannot be maintained, unless the statute aforesaid (1 Pollard's Code, 1904, sec. 1014-a, subsection 3) sustains it.

The language of the statute on such point above quoted, so far as material, is as follows: "In every case of annexation such city * * * shall assume and provide for the reimbursement of the county * * * of such just proportion of any existing indebtedness of such county as may be determined in said proceeding * * *." We are of opinion that the statute does not require the assumption by the municipality of some proportion "of any existing indebtedness" mentioned, but only of such proportion thereof as may be "just," if any.

We are, therefore, of opinion that there was no error in the holding of the court below complained of on this point.

We will now consider the cross-assignments of error of the city of Portsmouth above mentioned, which may be

83

again stated and will be passed upon in their order as set forth below.

[13]   4. Did the court err in requiring the city of Portsmouth to assume the $95,000 of school bonds, which were an existing lien on the school house property in the annexed territory?

This question must be answered in the negative.

It is urged in the brief for the city of Portsmouth that the order of court under review "required the city to pay for these school houses just as though they were free from lien." In this position such brief is in error. The order requires only that the "city of Portsmouth shall pay to the county of Norfolk the sum of $241.50 in cash when this order takes effect, and shall assume $95,000 of the bonds * * * now outstanding, and shall pay the interest thereon until maturity, as compensation for the said school houses and seven lots located within said annexed territory * * *" The $241.50 and the $95,000 of said bonds aggregate $95,-241.50, the total value of said school houses and lots as such value was ascertained and fixed by the court below.

No complaint is made by the city of Portsmouth of its having been required to pay the $241.50 as compensation for the said lots. Hence we cannot decree on that question.

It is a *concessum* in the case that the school bonds in question constituted a debt of the county within the meaning of the statute next below quoted.

The requirement aforesaid of the assumption by the city of Portsmouth of said $95,000 of existing indebtedness falls within the requirements of the aforesaid statute (1 Pollard's Code, 1904, sec. 1014-a, subsection 3), that "In every case of annexation such city * * * shall assume * * * such just proportion of any existing debt of such county as may be determined in such proceeding * * *;" unless, indeed, the equitable interest of the annexed territory and

its people in the Norfolk County Ferries aforesaid made it inequitable and unjust that this should be done.

On the latter question it must be borne in mind that these school bonds are not a lien on the said ferries; whereas the other indebtedness of the county of Norfolk above mentioned is a lien thereon. Hence, the principle upon which the conclusion was above reached, that the city of Portsmouth cannot under the statute last mentioned be required to assume any part of the indebtedness of the county of Norfolk aforesaid which is a lien on such ferries, can have no application to said $95,000 of school bond indebtedness so as to remove it from under the requirements of such statute. That being so, the statute is applicable to such school bond indebtedness and requires the city of Portsmouth to assume the same as the said order of court provides.

[14]   5. Did the court err in requiring the city of Portsmouth to pay the county of Norfolk $13,500, being one-half the cost of the Port Norfolk and West Norfolk bridge?

One-half of the bridge in question was included in the annexed territory.

The position taken for the city on this subject is that the statute (1 Pollard's Code, 1904, sec. 1014-a, subsection 3) does not contemplate compensation being made to the county for territory, and that it is only because of the express provisions of the statute requiring that compensation shall be provided for to the county "for any school house or other public building," that any compensation for territory or improvements thereon can be required.

[15]   We are of opinion that such position is well taken. On principle, annexation proceedings cannot be regarded as transactions of purchase and sale between private parties. They in truth involve merely a change of form of government of the territory affected from that of a county to that of a town or city. The county, town or city are all alike

mere political sub-divisions of but one and the same government, that of the State. Whatsoever has been done by the county government in the past and paid for, in the way of public improvements in the territory in question, has been done, as a general rule, by the people and property owners of such territory by their contributions of taxes, and if not, to the extent that such improvements have exceeded such contributions, their construction has been justified upon the consideration that their creation was for the general welfare of the whole of those upon whom the burden was placed of bearing the expense of such construction. So far as paid for, therefore, the *corpus* of such improvements constitutes no existing burden. The debit and credit side of the account of their construction is closed. They pass, it is true, with the territory covered by an annexation into the jurisdiction of and under a new form of government. But the new government is still a government of the same territory and of the same people and over the property therein. To require the new government to pay for the public property in the territory it receives would be the same thing in effect as to require such government to make again the same outlay which has been already made; which, of course, would have to be met in future by taxation; and which taxation, in part, at least, would fall upon the former people and property owners of the annexed territory, and to that extent would result in compelling them to pay twice for the same public improvements, or to pay for what the general welfare never required that they should pay.

With respect to existing indebtedness for the improvements mentioned, indeed, the principle is different. The inhabitants and property owners of the annexed territory have never made that outlay. When they pass under the new form of government, it is but just that they should carry that indebtedness with them. But it is not just to them that they should be made to carry a greater burden than that with them.

From the foregoing considerations it will be observed that the statute under consideration, in requiring that the municipality shall assume and provide for the reimbursement of the county, not only for a just proportion of any existing indebtedness, but "also for compensation for any school house or other public building of such county located within the annexed territory," etc., in truth departs from the true principle involved; and, hence, the statute will be strictly construed, upon an application for compensation for improvements upon the annexed territories, and the courts should not compel compensation such as that under consideration, which is beyond the requirements of the terms of the statute, whenever objection is properly made thereto.

Such was the view of the law, in principle, taken at circuit in the case of *Richmond* v. *Henrico and Chesterfield*, 20 Va. Law Reg. 268, at p. 272, where the learned judge who therein presided (Judge A. A. Campbell, of the twenty-first judicial circuit), said: "* * * the policy of the act does not seem to contemplate compensation for territory to the county." The precise point we have under consideration was not involved, however, and was not decided in that case.

The order under review will, therefore, be amended so as to omit any allowance of the item in question.

We have now to consider the assignments of error of the Southern Railway Company in its appeal in this case.

All the questions raised by the assignments of error of the Southern Railway Company have been disposed of by what has been said above, except that raised by the following assignment, namely:

6. That the failure to include the Southern Railway Company along with the Atlantic Coast Line Railroad Company and the two other railroad companies mentioned in the clause of the order of annexation under the heading "Terms and Conditions," subsection E, which provides that the city of Portsmouth will take no steps to increase the assess-

ment of any of the property of the railroads mentioned until the expiration of a period of twenty months after peace has been declared, and which also provides that the city shall not seek to have established any additional crossings or crossing safe-guards, other than those now established, until the expiration of that period, was an unwarranted and unjustifiable discrimination against the Southern Railway Company.

[16] Of this assignment of error we deem it sufficient to say, first, that it raises merely a moot question, as it does not appear that any action such as is referred to has been in fact taken by the city; and, secondly, it has been developed in the argument before us that no unfair discrimination against the Southern Railway Company was intended by the omission of the name of such company from such clause of the order, and counsel for the city in argument at the bar of this court having stated that there is no objection on the part of the city to the insertion of the name of the Southern Railway Company in such clause by the order which will be entered by this court, this will be accordingly done.

7. It having been suggested in argument before us that some confusion may arise with regard to what fiscal year is meant by clause "C" of the "Terms and Conditions" of the order of the court below, because of the pendency of the appeal in this case and the supersedeas awarded upon the allowance of such appeal, it will be ordered that the fiscal year mentioned in said order is the year for which the levies therein mentioned were imposed in 1918, and that all county levies which were imposed in the year 1918 by the county of Norfolk on persons and property within the annexed territory shall be paid to the county of Norfolk.

Upon the whole case, we are of opinion to amend the order of the court below in the four particulars above mentioned, and, subject to such amendments, to affirm such order, with costs to the city of Portsmouth, as the party substantially prevailing.

*Amended and affirmed.*