## Richmond

THE COUNTY SCHOOL BOARD OF ALLEGHANY COUNTY, THE BOARD OF SUPERVISORS OF ALLEGHANY COUNTY, AND THE COUNTY OF ALLEGHANY v. THE SCHOOL BOARD OF THE CITY OF COVINGTON, THE COUNCIL OF THE CITY OF COVINGTON, AND THE CITY OF COVINGTON.

March 5, 1956.

Record No. 4462.

Present, All the Justices.

The opinion states the case.

*Woods, Rogers, Muse & Walker; Roscoe B. Stephenson, Jr.* and *Sidney F. Parham, Jr.,* for the appellants.

*Hunton, Williams, Gay, Moore & Powell; Archibald G. Robertson, Harry Frazier, III, Cecil C. Collins* and *John T. Delaney,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On December 20, 1952, the Town of Covington in Alleghany county, Virginia, became a city of the second class pursuant to the transition statute. (Code, § 15-78 *ff.*) Subsequently a controversy arose as to the ownership of the public school properties which had been fully paid for and are now located within the boundaries of the new city. Appellants filed their bill for a declaratory judgment in the Circuit Court of Alleghany county against the appellees, seeking a determination of the ownership of these public school properties. The appellees demurred to the bill alleging that "under the common law of Virginia" "the fee simple title to said public school property situate within the corporate limits of the city" became vested in the School Board of the city of Covington on December 20, 1952, the transition date, and that the appellants "have no interest legal or equitable therein and are entitled to no compensation therefor." The trial court sustained the demurrer, dismissed the bill, and hence this appeal.

The pertinent facts alleged in the bill and admitted by the demurrer to be true may be stated thus:

The Town of Covington was granted a charter by the General Assembly in 1902. (Acts 1901-1902, ch. 467, p. 519.) In 1951 the

town boundaries were extended by annexation and those extended boundaries were retained as the corporate limits of the city upon its transition to a city.

As a town, Covington was a part of Alleghany county whose public schools were operated by the County School Board. When Covington became a city it ceased to be a part of the county, became a completely independent governmental subdivision, and was required by law to maintain its own public school system.

From 1901 to 1922, public schools erected within the territorial limits of the town were financed and administered by the Town of Covington School District. Since the adoption of the County Unit Act of 1922 (Acts 1922, ch. 423, p. 737) the public schools of Alleghany county, including those located in the Town of Covington, have been operated by the County School Board of Alleghany county.

Prior to the annexation of certain contiguous territory, effective December 31, 1951, five school buildings were built and located in the town. In addition to these, three schools were built and located in territory contiguous to the town and annexed in 1951. Thus, eight school buildings erected by the County School Board and its predecessor, the Town of Covington School District, constituting 77% of the appraised value of all schools in the county, are now located within the limits of the new city. All of these schools are fully paid for and free of debt. It is alleged that their present combined value is approximately $1,500,000.

Those schools which were acquired and constructed prior to 1922, were paid for by levies on the Town of Covington School District, which included substantial taxables still outside the corporate limits of the city. Schools acquired and constructed since 1922, have been paid for by levies on the Covington Magisterial District which included considerable taxables not now within the city.

The schools located in Covington were built for and are attended by children in the immediate area. Of the elementary school children attending these schools approximately 84% live within the present city limits and 16% in the county. Of the high school children about 71% live within the city limits and 29% in the county. Of the total assessed property values in both the county and city, 53.6% is located in the city and 46.4% in the county.

Since Covington became a city on December 20, 1952, the County School Board, with the consent of and at the request of the School

Board of the city, has continued to operate the school system as it existed prior to the date of transition.

Both in their bill and briefs appellants alleged that all of these school properties had been fully paid for and were free of debt, and that at the date of transition there was no county bonded indebtedness. In their brief appellees agreed that these statements were correct. The case was disposed of in the lower court upon these allegations and its written opinion so indicates.

After the appeal had been docketed and set for hearing, the appellants filed a written motion alleging that their counsel had "discovered" that on the date of transition there was an outstanding and unpaid indebtedness of the county, amounting to $30,000 and interest, maturing on December 31, 1952, representing the unpaid balance of a bond issue authorized by the voters of the county in 1938 to pay the cost of certain school construction. It was further alleged that on December 5, 1952, the board of supervisors had appropriated funds for the payment of these bonds, that on December 9 checks had been issued therefor by the county treasurer, made payable and delivered to the Chase National Bank of New York, at which the bonds had been made payable, with instructions that the remittance be applied to the payment of the bonds on the date of their maturity. It appears from the affidavit of the county treasurer, attached to the motion, that at the maturity date of the bonds the remittance was applied to the payment of this indebtedness and that the bonds have since been marked paid and returned to the treasurer.

The prayer of the motion was that since this debt had not been actually paid on the date of transition, December 20, 1952, it should be taken into consideration in the disposition of this appeal, or else that the case be remanded to the lower court with leave to the appellants to file an amended bill setting forth these additional facts.

The motion is overruled. In the first place, the record on appeal cannot be thus amended. Moreover, the matters alleged in the motion were of public record and all parties hereto had constructive if not actual notice thereof. It appears that before the date of transition funds sufficient to discharge this indebtedness, shortly to become due, had been placed for that purpose in the hands of the New York bank, the agent of the holder of the bonds. Plainly, both sides and the court below considered that these bonds did not constitute an outstanding indebtedness at the date of transition. We consider and treat them in the same way.

In its written opinion the lower court took the view that

except for the provision in section 15-102, requiring the city to assume a "just and reasonable proportion of any debt of the county existing at the date" of transition, the transition statute is "silent as to the vesting of public school property;" that since the school properties here involved are fully paid for and no debt adjustment between the city and the county is necessary, section 15-102 is not operative, and the city acquired "all the public school property within its corporate limits by transition under the common law" without obligation to pay the county therefor.

The result of the lower court's holding is to transfer to the newly created city the beneficial ownership of eight debt-free school properties of the alleged value of about $1,500,000, without compensation to the county therefor, leaving the county under the burden of acquiring and building at its own cost and expense a new system of public schools to serve the county pupils living in the vicinity.

In reaching its conclusion the lower court relied upon the principles laid down in *Laramie County* v. *Albany County*, 92 U. S. 307, 23 L. ed. 552. In that case the legislature of the Territory of Wyoming carved two new counties out of Laramie county without making any provision for the adjustment between the new and old counties of their respective debts and public properties located therein. A contest arose as to what contribution, if any, the new counties should make to Laramie county for the indebtedness incurred by the latter prior to the separation of the new counties therefrom. The court said:

"Regulation upon the subject may be prescribed by the Legislature; but, if they omit to make any provision in that regard, the presumption must be that they did not consider that any legislation in the particular case was necessary. Where the Legislature does not prescribe any such regulations, the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the Act of separation was passed. Old debts she must pay, without any claim for contribution; and the new subdivision has no claim to any portion of the public property except what falls within her boundaries, and to all that the old corporation has no claim." (92 U. S., at page 315.)

This principle has been applied in a number of jurisdictions with respect to the change of school district boundaries. But there is considerable authority supporting the contrary view that in the case of the alteration of the lines of a district so that school property is left within the limits of another district, the right to the

property remains in the old district. 47 Am. Jur., Schools, § 21, p. 312; 78 C. J. S., Schools and School Districts, § 73, pp. 799, 800.

It is well settled that since the formation of school districts is a governmental function, in the absence of constitutional restrictions, as is the case in this State, the legislature has full power to alter existing school districts without making any provision for the apportionment of the indebtedness or adjusting the equities between the districts. It may take the school facilities in one district and transfer them to another district without requiring compensation therefor. 78 C. J. S., Schools and School Districts, § 27, p. 663 ff; 47 Am. Jur., Schools, § 21, p. 312.

The lower court took the view that the "common law rule" is "recognized in Virginia," citing *Wade* v. *City of Richmond*, 18 Gratt. (59 Va.) 583, and *Norfolk County* v. *City of Portsmouth*, 124 Va. 639, 98 S. E. 755. We do not interpret those decisions as controlling the present case.

The *Wade* case merely upheld the right of the General Assembly to extend the corporate boundaries of the City of Richmond without making provision for the assumption of debts between the city and the county from which the annexed territory came. In the *Norfolk County* case (124 Va., at pages 659-661) we held that a bridge within the annexed territory was not a "public building" for which the city must compensate the county under the language of the then existing annexation statute. Pollard's Code of 1904, § 1014a(3); Code of 1919, § 2958.

The lower court's holding in the present case that the entire beneficial ownership of these school properties passed to the city by operation of law, without any obligation upon the city to compensate the county therefor, is contrary to the legislative policy of this State as indicated in statutes dealing with boundary changes of towns and cities. Since the first annexation statute (Acts 1904, ch. 99, p. 144) a city has been required to compensate a county for public school properties and certain other public improvements which, by virtue of the annexation, come within the territorial boundaries of the enlarged city. The same is true of the present statute. Code, §§ 15-152.12, 15-152.13; Acts 1952, ch. 328, p. 627.

At the next session of the General Assembly following the announcement of the decision in *Norfolk County* v. *City of Portsmouth*, *supra*, cited by the lower court, in which we held that the City of Portsmouth was not required under the terms of the then annexation statute to compensate the County of Norfolk for the

value of a bridge within the annexed territory, the annexation statute was amended so as to require a city to compensate a county for such an improvement. (Acts 1920, ch. 149, p. 210.) By this action the General Assembly showed clearly that the holding of this court was not in accord with the legislative policy of the State.

Appellees concede, and the lower court held, that under section 15-102 of the transition statute, providing for the adjustment of the county debt between a new city and the county, the city may be required to compensate the county for school property located in the city. *City of Colonial Heights* v. *Chesterfield County*, 196 Va. 155, 82 S. E. (2d) 566.

While it is true that in the case now before us Alleghany county has no bonded indebtedness and therefore no debt adjustment between it and the city is necessary, in the usual case such adjustment will be necessary, with the result that a city may be required to pay a county for school properties taken.

Thus, the general legislative policy of the State is not to apply the so-called common-law rule relied on by the city in this case, but to require a city to compensate a county for school properties taken by the city.

Under Code, § 22-147, the title to all public school property of a county, unless inconsistent with the grant or devise, is vested by operation of law in the county school board. Since no such inconsistency is alleged or appears in the record with respect to the properties here in controversy, the title thereto is vested in the County School Board of Alleghany county.

There is no provision in the transition statute that title to or ownership of county property located within the limits of a newly created city passes to the latter upon transition. Section 15-84 of the transition statute provides in part that, "The title to all the property of the *town*, * * * shall vest in and become the property of the city." (Italics supplied.) Neither in that section, nor in any other portion of the transition statute, is reference made to the transfer of county assets to the city. To assume that the General Assembly intended to imply an automatic succession in ownership in *county* assets where it expressly provided for such succession of *town* assets is to do violence to the usual rules of statutory construction.

Since there is no provision in the transition statute that title to and ownership of school properties become vested in a city, we hold

that the title to the school properties here in question is still vested in the County School Board of Alleghany county, in which it was vested by virtue of Code, § 22-147, *supra.*

In the light of the general legislative policy of the State that a city must compensate a county for school properties coming within the boundaries of a newly created or enlarged city, supported by the fundamental principle that property should not be taken from its owner under any circumstances without just compensation, we hold that before the City of Covington may take title to the school properties in question it must make proper compensation therefor.

The County School Board of Alleghany county acquired and holds title to such properties as trustee for the benefit of the public, that is, those who were citizens and taxpayers of the county at the time the properties were acquired and for whose benefit they were acquired. Such citizens and taxpayers, some of whom now live in the city and some in the county, are the real owners.

Counsel for appellants conceded in their oral argument before us, as they did in their briefs filed in the lower court, that those citizens and taxpayers who lived in the town and now live in the city, as well as the citizens and taxpayers who now live in the county, have a beneficial interest in these properties. We agree that this is so. The measure of the beneficial interest of the citizens and taxpayers of the city and county, respectively, as of the date of transition, is the ratio which the taxable values subject to levies for school purposes lying in the city and county, respectively, bear to the total of such taxable values in both the city and county at the date of transition. It is from such levies that the necessary funds must be derived to adjust and settle the equities of the city and county in such properties. *City of Colonial Heights* v. *Chesterfield County, supra* (196 Va., at page 169, 82 S. E. (2d), at page 574).

For these reasons we are of opinion that the lower court erred in its decree sustaining the demurrer to the bill and holding that the school properties in question, located within the present corporate limits of the City of Covington, passed to the city on the transition date without obligation on the part of the city to compensate the county therefor. Accordingly, the decree is reversed and the cause remanded for further proceedings in conformity with the principles here laid down.

*Reversed and remanded.*