## Wytheville.

### BENNETT, ET AL., V. GARRETT, ET AL.

#### June 15, 1922.

1. MUNICIPAL CORPORATIONS—*Creation—Petitions in Opposition.*— Section 2883 of the Code of 1919 permits any residents of a county to have themselves made parties defendant in a proceeding to incorporate a portion of the territory of the county, and the statute prescribes no particular form in which the motion is to be made.

2. MUNICIPAL CORPORATIONS—*Creation—Petitions in Opposition— ·Case at Bar.*—In a proceeding by certain inhabitants of a community in a county to obtain a town charter, the action of the court in permitting counsel for contestants on the first day of ·the trial to file eight separate petitions signed by numerous residents of the county indicating their opposition to the application for the charter, was assigned as error on the ground that these petitions were signed by persons not defendants.

   *Held:* That this assignment was untenable, as the bill of exceptions upon which the assignment was based showed affirmatively that the signers of the petitions asked and were allowed to come in as defendants; and, moreover, it appeared from another certificate that the court, in terms, held that the persons in question would be regarded as defendants.

3. MUNICIPAL CORPORATIONS—*Creation—Petitions in Opposition— Case at Bar.*—In a proceeding by certain inhabitants of a community in a county to obtain a town charter, the court allowed counsel for contestants on the first day of the trial to file eight separate petitions signed by numerous residents of the county, indicating their opposition to the application for the charter. At the time these petitions were offered, no sufficiently definite claim was made that the plaintiffs were being prejudiced by the alleged surprise arising from the filing of these petitions, and no motion was made for a continuance on that account.

   *Held:* That the plaintiffs, by their failure to raise the point of surprise and to ask for a continuance, waived the point.

4. MUNICIPAL CORPORATIONS—*Creation—Petitions in Opposition— Case at Bar.*—Upon the application of certain inhabitants of

a community to obtain a town charter, the court permitted, on the first day of the trial, the filing of eight separate petitions signed by numerous residents of the county, indicating their opposition to the application for the charter. Plaintiffs objected that the trial court must necessarily have been unduly influenced by the imposing array of names thus suddenly appearing in opposition to the charter.

*Held:* That the Supreme Court of Appeals must presume that the trial judge was not unduly influenced by these petitions.

5. MUNICIPAL CORPORATIONS—*Creation—Petitions in Opposition.*— The mere fact that a very large number of residents of the county opposed the incorporation is a proper matter for the consideration of the court, though, of course, it would have to appear in some way that their opposition was not merely whimsical.

6. MUNICIPAL CORPORATIONS—*Creation—Evidence—Vague Motion to Strike Out Testimony—Assignment of Error.*—In a proceeding by certain inhabitants of a community in a county to obtain a town charter, after a witness had been asked a question as to the public schools, plaintiffs objected to the question and moved the court "to strike out all the evidence that had gone into the record regarding what would be done with the schools if the community was incorporated." What this witness had said, so far as shown, had no significance of any kind, and the motion was entirely too vague to be availed of in the appellate court, there being neither in the bill of exceptions nor in the petition any effort to point out this evidence.

7. MUNICIPAL CORPORATIONS—*Creation—Effect of Incorporation of Schools.*—In a proceeding by certain inhabitants of a community in a county to obtain a town charter, the effect which the incorporation would have upon the schools of the town is immaterial.

8. MUNICIPAL CORPORATIONS—*Creation—Evidence—Facts as to Other Municipalities.*—In a proceeding by certain inhabitants of a community in a county to obtain a town charter, the refusal to allow a witness to testify in substance that another town with taxable values approximately the same as would be included within the proposed new town had been able to successfully finance its municipal government was not error, as the testimony related to a collateral fact existing under conditions not shown to be substantially similar to those involved in the instant case.

9. APPEAL AND ERROR—*Discretion of Trial Court—Counties, Cities and Towns.*—In matters affecting the interests and internal affairs and control of counties, cities and towns, the Supreme

Court of Appeals is always disposed to accord much latitude to the discretion and decision of the lower courts. These matters are peculiarly within their province and jurisdiction.

10. MUNICIPAL CORPORATIONS—*Creation—Weight of Decision of Trial Court.*—In proceedings for the incorporation of towns, the statute contemplates that the trial judge shall hear the evidence in person, and his decision is to be given special weight upon questions of fact.

11. MUNICIPAL CORPORATIONS—*Creation—Incorporation of Part of Thickly Settled Community.*—In a proceeding by certain inhabitants of a community in a county to obtain a town charter, the trial judge rejected the application for incorporation, regarding the community sought to be incorporated as only a part of a thickly settled community, reaching that conclusion upon the evidence, and from his conclusion the Supreme Court of Appeals found no reason to dissent. That a part only of a thickly settled community cannot be incorporated was determined in the case of *Board of Supervisors of Norfolk County* v. *Duke,* 113 Va. 94, 73 S. E. 456.

12. MUNICIPAL CORPORATIONS—*Creation—General Good of the Community.*—Notwithstanding the fact that a proposed incorporation of a town would promote the interests of the inhabitants of the proposed corporate area, and that a very large majority of such inhabitants are in favor of the charter, the petition for incorporation will be denied, where the evidence shows that the general good of the whole community affected demands such denial.

13. MUNICIPAL CORPORATIONS—*Creation—Discretion of Trial Court —General Good of the Community.*—From the provisions of chapter 116 of the Code of 1919, in regard to the incorporation of towns, it is manifest that the lawmakers intended to vest the widest discretion in the trial courts, and also that the latter were not expected to regard merely the wishes and interests of the inhabitants of the area proposed to be incorporated, but, as the statute expressly provides, the court must be satisfied "that the general good of the community will be promoted."

14. MUNICIPAL CORPORATIONS — *Creation — Words and Phrases — "Community."*—When chapter 116 of the Code of 1919, providing for the incorporation of towns, refers to the "general good of the community," the word "community" is not necessarily confined to the proposed corporate limits. If such limits are carved out of a thickly settled section, the word "community" must be construed as embracing the whole section.

Error to a judgment of the Circuit Court of Arlington county upon a petition to obtain a town charter. Judgment for defendants. Petitioners assign error.

*Affirmed.*

The opinion states the case.

*Chas. F. Harrison* and *A. P. Payne,* for the plaintiffs in error.

*Wm. C. Gloth, E. W. R. Ewing* and *H. R. Thomas,* for the defendants in error.

KELLY, P., delivered the opinion of the court.

This is a proceeding by certain inhabitants of an unincorporated community, known as Clarendon, in Arlington county, to obtain a town charter, pursuant to the provisions of chapter 116 of the Code. The application was opposed by numerous residents of the county living within or near the proposed corporate limits, and also by the board of supervisors.

Numerous grounds of defense were specified in writing, but the important ones are, (1) that the purpose of the petition is to segregate for incorporation a part only of a thickly settled community to the detriment of other parts thereof; (2) that the best interests of Arlington county as a whole will be prejudiced by the incorporation applied for; and (3) that the welfare of those living within the proposed corporate limits will be injuriously affected by the proposed incorporation.

A great mass of testimony was taken, all in the presence of the trial judge, and at the conclusion thereof the court entered a final order denying the prayer of the petition, and dismissing the cause. From that order this writ of error was allowed.

[1, 2] The first assignment of error complains of the action of the court in permitting counsel for contestants on the first day of the trial to file eight separate petitions signed by numerous residents of the county indicating their opposition to the application for the charter. It is insisted (a) that these petitions were signed by persons who had not properly come into the litigation as defendants; (b) that the cause had been pending for a long time, and the petitions ought to have been filed far enough in advance of the trial to enable the plaintiffs to investigate and ascertain to what extent the signers of these opposition petitions were interested; and (c) that the trial court must necessarily have been unduly influenced by the imposing array of names thus suddenly appearing in opposition to the charter.

These positions are all wholly untenable. The first, as to parties defendant, is answered by the bill of exceptions upon which the assignment is based, showing affirmatively that "the several defendants" (manifestly referring to defendants already recognized as being duly in court) presented "eight separate petitions containing several hundred names, as will appear on pages * * *, and asked that they be made parties defendant to this proceeding, to the filing of which petitions the plaintiffs objected; which objection the court overruled and permitted the filing of said petitions." This, in effect, shows that these new petitioners asked, and were allowed, to come in as defendants; but if there be any doubt as to this proposition, the plaintiffs in error expressly rely upon a portion of the record at large (not embodied in the bill of exceptions last above mentioned, but appearing in another certificate) which shows that the court, in terms, held that the persons in question would be regarded as defendants. This was in accord with section 2883 of the Code, permitting any residents of the county, on motion, to have themselves made parties defendant. The statute prescribes no particular form in which

the motion is to be made, and what the court did in this instance was a substantial compliance with the law.

[3] As to the alleged injustice to the plaintiffs arising from the belated filing of the petitions, it is enough to say that, at the time they were offered, no sufficiently definite claim was made that the plaintiffs were being prejudiced by the alleged surprise, and no motion was made then for a continuance on that account. It was perfectly proper, in any view of the case, for the court to allow these petitions to be filed and these parties to become defendants in the cause. If the plaintiffs really felt that they were being placed at a disadvantage by the fact that these petitions came in late and without giving them time to duly consider the same before going into the trial, they ought to have made that point, and we will presume that, if the point had been fortified and sustained by good reason, the trial court would have continued or postponed the hearing. At any rate, by failing to make the motion and ask for the postponement or continuance, the plaintiffs waived the point.

[4, 5] As to the effect which these numerously signed petitions may have had on the court, we must presume that the trial judge was not unduly influenced thereby, but that he decided the case upon the evidence. No doubt, he gave some weight to the mere fact that so many residents of the county appeared in opposition to the charter, but this is as it should be, for the statute was not enacted with an eye single to the wishes and interests of those within a proposed incorporated area, but clearly intended to protect the welfare of the county and its inhabitants by allowing the board of supervisors or any residents thereof to come in and defend the application. The mere fact that a very large number of residents of the county opposed the incorporation is a proper matter for the consideration of the court, though, of course, it would have to appear in some way that their opposition was not merely whimsical.

[6] Bill of exceptions No. 2 is as follows:

"Be it remembered that on the trial of this case the several defendants to sustain their several issues and during the taking of the testimony of J. Thomas Manning, a witness for petitioners (*i. e.*, plaintiffs), defendants asked said witness the following question, viz:

" 'And how would you raise the money for the putting of a school building? Would you do it by public subscription or any subscription?' To which question said witness answered: 'I did not say that. Mr. Lyons has made an offer, but as to what he will do remains to be seen.' Thereupon, counsel for defendants made the statement to witness: 'You said that you had a way—' Whereupon, plaintiffs objected to the question and moved the court to strike out all the evidence that had gone into the record regarding what would be done with the schools, if the community was incorporated, on the ground that there was no law to compel any town to become a separate school district and take over the schools if it did not choose to do so. Which motion the court overruled for the time being," etc.

It is said that the question presented by this exception was as to the effect which the incorporation of the town would have on the schools. Certainly, nothing appears in the certificate as above quoted which could possibly have prejudiced the plaintiffs, because what the witness said, so far as there shown, had no significance of any kind. The motion to strike out, as set forth therein, was entirely too vague to be availed of in this court. The record before us covers nearly four hundred printed pages, composed chiefly of the testimony, and while we have read the same carefully with a view to determining the merits of the cause, we do not recognize any obligation upon us to search through the record to find out what was "all the evidence that had gone into the record regarding what would be done with the schools if the community was incorporated." Neither in

the bill of exceptions nor in the petition is there any effort to point out this evidence, and the exception and assignment are, therefore, wholly insufficient. See *P. Lorillard Co.* v. *Clay*, 127 Va. 734, 748, 104 S. E. 384.

[7] We will add, however, that the decision of this controversy could not, in our view of the case, be materially affected by, and does not vitally depend upon, the effect which the incorporation would have upon the schools of the town, and the point under consideration is, therefore, after all, immaterial. The case is controlled by considerations, as will hereinafter appear, which overreach any question affecting merely the schools, or any other matter relating only to the welfare of the locality proposed to be included within the corporate limits.

[8] The trial court refused to allow Mr. Charles F. Harrison, one of the attorneys for the plaintiffs, to testify in substance that the town of Leesburg, with taxable values approximately the same as would be included within the proposed new town, had been able to successfully finance its municipal government, and to provide its inhabitants with sewers, water, electric lights, paved streets, police protection, etc.; and this action is assigned as error.

The court was clearly right in excluding this testimony. It related to a collateral fact existing under conditions not shown to be substantially similar to those involved in the case at bar. *Ellis* v. *Harris*, 32 Gratt. (73 Va.) 688; *Riverside, etc., Cotton Mills* v. *Waugh*, 117 Va. 386, 390, 84 S. E. 658; *N. & W. R. Co.* v. *Henderson's Adm'r*, *ante*, p. 297.

The final and important assignment of error is that the court denied the relief prayed for, and dismissed the petition.

[9, 10] In matters affecting the interests and internal affairs and control of counties, cities and towns, we are always disposed to accord much latitude to the discretion and decision of the lower courts. These matters are peculiarly within

their province and jurisdiction. They are presided over by able and impartial judges, who, by reason of their knowledge of local conditions, are in a far better position than we are to arrive at correct conclusions in such cases. Furthermore, in proceedings for the incorporation of towns, the statute contemplates that the trial judge shall, as he did in this instance, hear the evidence in person, and his decision is to be given especial weight upon questions of fact. *Norfolk County* v. *Portsmouth,* 124 Va. 639, 644, 98 S. E. 755.

[11] The following is said in the petition for the writ of error: "The matters of defense seemed finally to focus on the one and the only *one ground* that was seriously argued, and the *one* that was stated by the court from the bench when judgment was rendered as the controlling reason for that judgment, and that was that, however much he might like to permit the incorporation, he was prevented therefrom by the authority of the case of *Board of Supervisors of Norfolk County* v. *Duke,* 113 Va. 94, 73 S. E. 456, which case furnished a precedent that the court felt compelled to follow in the matter, in that said case decided that you could not incorporate a part of a thickly settled community. And the court considered Clarendon a part merely of a thickly settled community. This *one* ground of defense, which is numbered 'First' among the particulars of the defense (see page 556), was the all-controlling point that was the backbone of the defense and the basis for the judgment rendered. And it is an unsound defense and caused the court to render an unfair and an unjust judgment."

With the exception of the last sentence of the foregoing quotation, we wish to accept and adopt the same as a part of this opinion. The trial judge followed the *Duke Case* because he regarded Clarendon as only a part of a thickly settled community. He reached this latter conclusion upon the evidence, and from that conclusion we find no reason to dissent.

[12] There is room under the evidence to doubt whether the incorporation of the town applied for would in fact, as claimed by plaintiffs in error, promote the interests of the inhabitants of the proposed corporate area, but conceding that the plaintiffs are right in this respect, and conceding further that a very large majority of such persons are in favor of the charter, the lower court found, and we think the evidence shows, that the general good of the whole community affected demands a denial of the petition.

[13, 14] The statute (Ch. 116 of the Code) provides that before a town charter is granted, the court must be satisfied "that the general good of the community will be promoted"; that the board of supervisors of the county, or any residents thereof, may become parties defendant and resist the application; and that "in every case the court may dispose of the matter as in its discretion may appear best." From these provisions, it is manifest that the lawmakers intended to vest the widest discretion in the trial courts, and also that the latter were not expected to regard merely the wishes and interests of the inhabitants of the area proposed to be incorporated. It would be idle to give the board of supervisors and citizens of the community the right to come in, and yet hold that their interests are to have no weight; nor would there be any good reason for giving the court the power to decide "every case" in accordance with its discretion if in any case only the wishes of those within the incorporated area are to be considered. When the statute refers to the "general good of the community," the word "community" is not necessarily confined to the proposed corporate limits. If such limits are carved out of a thickly settled section, the word "community" must be construed as embracing the whole section. This was the effect of the decision in *Board of Supervisors* v. *Duke, supra,* and that decision controls this case.

Accompanying the record before us is a large map show-

ing the country immediately surrounding and adjacent to the community known as Clarendon. From this map, and from the evidence, it appears that another community, known as Ballston, with about the same number of inhabitants, is situated quite near Clarendon. Ineed, the two communities are practically interlocked, it being only about one mile from the center of Clarendon to the center of Ballston. The proposed incorporation would take in a part of what is now Ballston and would omit another part of it. The residents of Ballston are opposed to the incorporation, and their interests would in all probability be seriously prejudiced thereby. Much the same consequences would result to other settlements in close proximity to Clarendon. The whole of Arlington county comprises a very small area, and it is densely populated. From the evidence in this case, it appears doubtful whether any small town could be chartered therein without detriment to the general good of the county.

We have not deemed it necessary to go into any elaborate discussion of the evidence. It is enough to say that, upon the whole case, we are clearly of opinion that the judgment of the circuit court was right, and should be affirmed.

*Affirmed.*