# Richmond

## County of Fairfax v. Town of Fairfax

November 30, 1959.

Record No. 4999.

Present, All the Justices.

The opinion states the case.

*Frank L. Ball* and *Robert J. Fitzgerald, Commonwealth's Attorney*, for the appellant.

*Calvin Van Dyck* (*E. A. Prichard,* on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

The Town of Fairfax instituted this proceeding on December 31, 1957, seeking to extend its corporate limits by annexing 5,070.15 acres of land in Fairfax County, adjacent to the town in all four directions, chiefly on the north, east and south.

Fairfax County and numerous intervenors, freeholders not residing in the Town of Fairfax nor in the area proposed to be annexed, opposed the annexation. On the other hand, a large number of freeholders living in the area sought to be annexed, filed thirty-one separate petitions asking that their area be annexed to the town. No resident of the area sought to be annexed appeared in opposition to annexation.

The trial court, composed of Paul E. Brown, senior resident Judge of Fairfax County, Hamilton Haas, Judge of the Twenty-fifth Judicial Circuit, and J. Jordan Temple, Judge of the Third Judicial Circuit, entered a unanimous decree granting the town a total area of 2,224.90 acres, subject to defined terms and conditions imposed upon the town. The trial court, in its opinion, held that the town had failed to establish sufficient desirability and expediency for the inclusion of the area south of the town and the farthermost part of the area north of the town and therefore reduced the area sought to be annexed to the amount of the acreage granted.

The county, on appeal, assigns eleven grounds of error to the action of the trial court. They are mostly covered in its contentions: (1) That the town failed to establish by a preponderance of the evidence that is was necessary or expedient for it to annex any of the territory

sought; (2) That there was shown no community of interest between the town and the area granted to it; (3) That the interests of the county would suffer irreparable loss and damage by reason of the annexation; and, (4) That the court erred in giving weight to the fact that no residents of the area affected opposed its annexation to the town.

None of the freeholders opposing annexation joined in the appeal. The town does not object to the failure of the court to grant it all of the territory sought. It asserts that the decree entered was fair and equitable.

The county argues that the development and administration of its whole area is of paramount importance, and can be best accomplished by keeping the county intact as a unit rather than by dividing it into a number of political units, which have grown in population from without rather than from within. It points out that it is operating under the county excutive form of government, and is financially stable and progressive. It claims that it is rendering adequate service to its residents; and that annexation is not in the best interest of the town or the county. It also complains that if the town becomes a city, because of population increase resulting from annexation, the county will suffer great financial harm.

The record containing the pleadings and evidence consists of 533 printed pages and there are 90 exhibits consisting of maps, tables and charts. Since the finding of the trial court in favor of the town is based on evidence taken *ore tenus*, we will state the evidence from the standpoint most favorable to it. *Henrico* v. *City of Richmond*, 177 Va. 754, 782, 15 S. E. 2d 309, 318; *Falls Church* v. *Board of Supervisors*, 193 Va. 112, 119, 68 S. E. 2d 96.

The Town of Fairfax, an old and historical courthouse town, was first incorporated in 1874. Its present boundaries, irregular in shape, were fixed in 1892, and have since remained unchanged. It is distant about fourteen miles southwest from the City of Washington, D. C. Prior to 1930, its growth in residents was small; but located in the direct line of a great influx of population, due to the increased activities of the Federal government in and around the metropolitan area of the National Capital, its population thereafter repidly increased. Between 1951 and 1958, it grew from 1,946 to approximately 6,800, representing an increase of 249%. In the same time, the county, with a land area of 400 square miles, grew from a rural farming community to a great urban area with a density of more than 1,000 persons per

square mile in certain sectors, and more than 500 per square mile in the county as a whole, an increase of approximately 111%.

The town is serviced by four arterial primary highways and other roads of lesser grade, which afford easy access to all parts of the metropolitan area of Washington and other sections of this Commonwealth. In recent years, there has been an extensive commercial and residential development in the territory adjoining the town, which has brought the establishment of large commercial enterprises, consisting of supermarkets, branch banks, and shopping centers, all identified with the town by name, post office, and telephone.

The increase in population confronted the town with many problems, and it employed a town engineer in 1953, to aid it in solving its growing municipal difficulties. In 1956, it adopted the town manager form of government and enlarged and improved its governmental organization and municipal activities. It has had a municipal water system since 1935. In 1954, it prepared for future expansion and growth by making plans to enlarge its well water supply with a permanent water system project by building a dam on Goose Creek in Loudoun County to impound a large supply of water. The county did not assist or aid in this project. *Board of Supervisors* v. *Town of Fairfax*, 199 Va. 612, 101 S. E. 2d 519.

A sewerage system was established in the town in 1935. In 1953, a new sewage treatment plant serving 5,000 people was constructed, and since 1955 this plant has been extended to a capacity of 2,000,000 gallons per day, enabling it to serve 20,000 people, which is said to have the highest efficiency of any similar plant in the State.

The town is serving water to most of the people living within the area to be annexed and sewers for a majority of those within that area. From each of those sources it realizes a considerable net income; and on the other hand, the county has made no provision nor presented any plans for serving that area with either water or sewers.

The town is operating under a budget control and fiscal system in keeping with the growth of its administrative operations and facilities. It is in a sound financial condition and has been able to carry out all its projects, utilities and other municipal services and still stay well below its debt limitation. In addition to its sewerage and water systems, its municipal services include police protection, trash and garbage collection, street maintenance and construction, and street lighting and cleaning. Notwithstanding the rendering of those services within its present borders and in its outside area, it has

reduced its tax rate from $1.00 per $100 valuation in 1950 to a 45¢ rate in 1957.

There is little acreage within the present town limits available for the expansion and growth expected under prevailing conditions. It is clear that the availability of its sewerage and water systems and other municipal services rendered have had much to do with the growth of the population immediately adjacent to it, a growth larger than in sectors of the county further removed.

With the exception of police and fire protection and schools, the county has provided little service to the area proposed to be annexed. It supplies no fire hydrants; whereas, the town has installed 180 in the town and in the annexed area. The town contributes funds to support county-wide fire protection, and provides free water to the unit located in the town which serves it and its immediate adjacent area. The residents of the town pay their proportionate share of school taxes.

Witnesses introduced by the county and the intervenors testified to the effect that it was not necessary or expedient for the town to annex any of the territory sought by it; that annexation would be contrary to the best interests of the county and its plans for development as a whole; and that there was no community of interest between the residents of the town and the area sought to be annexed by it.

The trial court, composed of three able and experienced judges, one a resident of the County of Fairfax, with the opportunity of hearing the witnesses testify, of examining and having explained to them the numerous exhibits, and of viewing the territory involved, resolved the conflicts in the evidence in favor of the town. In balancing the benefits and injuries to the parties concerned, it set forth in detail in its order of annexation the terms and conditions upon which the annexation was granted. Code, § 15-152.11 (d).

On appeal we proceed with the presumption of the correctness of the decision of the trial court on all questions of fact, which is binding on us, unless the decision of the court is plainly wrong or without evidence to support it. If there is credible evidence to support its decree, we must, on established principles, accept it just as we must accept the jury's verdict sustained by evidence which it might have believed. *Henrico* v. *City of Richmond, supra,* 177 Va. pages 782, 783; *Falls Church* v. *Board of Supervisors, supra.*

The policy of the State with regard to boundary changes of

towns and cities is set out in Section 126 of the Constitution and in Title 15, Chapter 8, sections 15-152.2 to 15-161.3, inclusive, 1956 Replacement Volume, Code of Virginia, 1950, enacted in accordance with the duty imposed upon the General Assembly.

The principles to be followed and the tests to be applied in arriving at the determinination of the issues in an annexation case have been well settled by numerous decisions of this Court. They have been succinctly stated recently by Mr. Justice I'Anson in *Rockingham County, etc., et al.* v. *Town of Timberville*, 201 Va. 303, 110 S. E. 2d 390, and the cases reviewed. The facts in that case are in sharp contrast with those in the case now before us, but the governing principles stated are appropriate in any annexation case, when the facts justify their application.

In determining whether annexation is necessary and expedient for a city or town, factors to be considered are its size, its crowded condition, its past growth, its need in the reasonably near future for development and expansion, the health of the community, whether the terms proposed are reasonable, fair and just, and whether proper provision will be made for future management, *Henrico County* v. *City of Richmond*, 106 Va. 282, 284, 295, 55 S. E. 683, 117 Am. St. Rep. 1001; *Alexandria* v. *Alexandria County*, 117 Va. 230, 234, 84 S. E. 630; and *Rockingham County, etc., et al.* v. *Town of Timberville, supra*, 201 Va. 303; the result of the development promised by the combination of the resources of two urban communities under a single political unit in the light of the best interests of the State, the town, or city, the county, and the territory proposed to be annexed, *Warwick County* v. *Newport News*, 120 Va. 177, 193, 90 S. E. 644; *County of Norfolk* v. *Portsmouth*, 186 Va. 1032, 1045, 45 S. E. 2d 136; community of interest, if any, between the town or city and the area proposed to be annexed, *Alexandria* v. *Alexandria County, supra*, 117 Va. page 241; *County of Norfolk* v. *Portsmouth, supra*, 186 Va. page 1045; *Falls Church* v. *Board of Supervisors, supra*, 193 Va. page 118; and financial ability of the town or city to provide for development after annexation, *County of Fairfax* v. *Alexandria*, 193 Va. 82, 85, 68 S. E. 2d 101.

The area ordered to be annexed to the town is concededly compact and urban in character. The residents of that area are enjoying the municipal services and other advantages resulting from living close to the town, and this has caused the interests of the two areas to be closely interwoven. The town has shown a consciousness

of the needs of its residents and those residing near its borders and an alertness and ability to relieve those needs. The expanded area can be served with water and sewers by the town, as it is to a large extent now served. The rendition of those and other services of a municipal nature will result in benefits to the residents of the annexed area. All in all, the town appears to be a well organized, virile, and progressive municipality, fully capable of meeting current and future problems successfully. A combination of the resources of the town and the annexed area into a single integrated political unit will present the opportunity for a greater development of service to residents of both areas.

The evidence does not show that the county, 400 square miles in area, will suffer irreparable damages as a result of the annexation. The transfer of a part of its territory naturally causes a loss of some taxable property values; but much of that will be overcome by the effect of the development of the town upon the remaining area adjacent thereto. No single factor controls in determining the necessity and expediency of annexation. Since it is usually the case that one or more of the parties will suffer some injury, in the event annexation is granted, Code, § 15-152.11 (d) provides that the order granting annexation shall set forth, in detail, the terms and conditions upon which it is allowed, thus permitting a balancing of the benefits and injuries to the parties affected. All of the terms and conditions of the court's order in this case were imposed on the town, and they are not under attack.

One of the fifteen terms and conditions imposed by the court's order provided that:

"If, within five years from the entry of this order, the Town of Fairfax shall become a city, this Court shall be reconvened to determine the amount of the payment the Town of Fairfax shall be required to make to the County of Fairfax in accordance with the provisions of Section 15-152.12 (d) of the Code of Virginia."

It is highly significant that many residents of the area sought to be annexed favored annexation and none opposed. It tends to show that they need the services rendered by the town. A majority of the church members in that area maintain membership in the churches of the town, and a large number of them have membership in clubs and organizations therein. The residents of the annexed area identify themselves, their establishments and enterprises with the town by name, post office, and telephone. At the same time, the residents

of the town use the new and more modern facilities maintained by large commercial enterprises just outside the corporate limits. These relationships and the general situation evidence a substantial community of interest between the two areas.

While trial courts must not merely regard the wishes of residents of an area proposed to be annexed, they should give some consideration to their wishes, especially where no such residents oppose the annexation, in determining the question of the best interests of the parties affected. *Bennett* v. *Garrett*, 132 Va. 397, 406, 112 S. E. 772.

In *Henrico* v. *City of Richmond, supra*, 177 Va., at page 789, we said:

"It is not so much that *he* [the resident in the area proposed to be annexed] needs the city government as it is that the area in which he lives needs it."

We are of opinion the evidence, which the trial court accepted, amply shows that there is a "necessity for annexation" by the town of the territory granted, "considering the best interests of the county and the * * * town, the best interests, services to be rendered and needs of the area proposed to be annexed, and the best interests of the remaining portion of the county." Code, § 15-152.11 (b).

The decree appealed from provides that the annexation therein provided for "shall take effect and be in force from and after the 31st day of December, 1958." Because of the suspension of the decree pending this appeal, the decree will be amended to provide that it will take effect at midnight on the 31st day of December, 1959, *Henrico* v. *City of Richmond, supra*, 177 Va. at page 805.

The Town of Fairfax, having substantially prevailed on this appeal, will recover its costs in this Court. Code, § 15-152.15, 1956 Replacement Volume, Code of 1950.

The decree of the trial court is affirmed, with the amendment noted.

*Affirmed.*